VEENSTRA & DEHAAN COAL CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 15518.   Promulgated December 2, 1948.

*George Lewis, Esq.*, and *Ferdinand Tannenbaum, Esq.*, for the petitioner.

*John E. Mahoney, Esq.*, for the respondent.

KERN, *Judge*: As a result of the wartime conditions prevailing in 1943, petitioner, which was engaged in the business of buying coal and coke at wholesale and selling these commodities at retail, desired to have its customers indicate their needs in advance and was able to obtain deposits from its customers to be applied on the price of coal and coke to be charged by petitioner when and if the coal and coke was sold and delivered to them. As of December 31, 1943, petitioner had on hand the amount of $11,380.93 representing the balance of deposits made in 1943 which either was applicable on the sale prices to which it might be entitled by reason of sales and deliveries to be made in 1944, or was refundable to customers by reason of its inability to obtain coal and coke for sale to them. As of that date petitioner did not know whether it would be able to fill all the orders on which deposits had been made. Neither did it know what the wholesale price of coal and coke would be, nor did it know what the retail price of coal and coke would be at the time of sale and delivery to the customers. As of that date it had on hand only a small amount of coal and coke. Thus, the amount of deposits on hand at the end of the year was conditionally held by petitioner against future performance by it of contingent executory contracts to sell. Respondent determined "that the amount of $11,380.93 received during the taxable year 1943 is includible in your gross income for said taxable year."

Income subject to tax under the Sixteenth Amendment to the Constitution, and designated as taxable in section 22 (a) of the Internal Revenue Code, may be gross income not subject to deductions granted as a matter of legislative grace; but gross receipts are not equivalent to gross income. See *Doyle* v. *Mitchell Brothers Co.*, 247 U. S. 179; *Southern Pacific Co.* v. *Lowe*, 247 U. S. 330. It is axiomatic that a receipt of capital or a return of capital does not constitute taxable income. In the usual sale of property the price is paid by the vendee at the time of or after the sale and the delivery of (or a passing of title to) the property sold. In such a case the gross income derived by the vendor from the transaction is the excess of the purchase price over his cost or other basis to the property, and the usual problem is whether the payments, when received, should "be attributed in their entirety to capital until it is fully returned, the excess thereafter being treated as income," or whether a part of each payment should be considered as a return of capital and the remainder considered as taxable gross income. See Mertens, Law of Federal Income Taxation, § 5.07. In some cases involving contracts to sell property, even specific prop-

erty, at a specific price,[1] an amount is paid to the vendor before the sale to be applied on the purchase price, contingent upon the consummation of the sale upon stated conditions. In those cases the gain from the sale, i. e., the excess of price over basis, has been held to be gross income in the year when the sale is consummated, and not in the year when the contract was executed and the "advance payment" was made. See *Sophia M. Garretson*, 10 B. T. A. 1381; *Consolidated Utilities Co.* v. *Commissioner*, 84 Fed. (2d) 548. The reason for this is obvious: In the case of sales of property the gross income of the vendor is the gain derived from the sale, and until the sale is made, there is no gain. As the Court said in *Consolidated Utilities Co.* v. *Commissioner, supra,* "* * * the statute taxes gains from sales, not estimated gains from contracts to sell * * *." Not until the transaction of sale is a closed one will a gain arise which will constitute gross income to the vendor. See *Burnet* v. *Logan*, 283 U. S. 404.

In the instant case the contracts between petitioner and its customers were executory and contingent contracts to sell unascertained, not specific, goods, at an unspecified price, which were to be acquired, if possible, by petitioner at a cost unknown to it at the time the contracts were executed. At the end of the taxable year, the contracts, in so far as the deposits here at issue were concerned, were still executory, were still contingent upon petitioner's obtaining coal and coke, were still contracts to sell unascertained goods at an unspecified price, and, except for a small amount of goods on hand, were contracts to sell goods which were to be acquired at a cost unknown and unknowable by petitioner. Even if "estimated gains from contracts to sell" constituted gross income subject to tax, no possible way has been suggested by respondent, and none occurs to us, by which the gain from the petitioner's contracts to sell could be estimated as of December 31, 1943. Under the facts presented by the record, we are of the opinion that respondent's determination that the entire amount of the deposits on hand as of that date constituted gross income to petitioner in 1943 is not only erroneous, but is also arbitrary within the rule of *Helvering* v. *Taylor*, 293 U. S. 507.

Respondent's determination is probably due to a misconception of such cases as *South Tacoma Motor Co.*, 3 T. C. 411; *Your Health Club, Inc.*, 4 T. C. 385; *National Airlines, Inc.*, 9 T. C. 159; and *Capital Warehouse Co.*, 9 T. C. 966, upon which he relies on brief. Those were cases in which payments were made in advance for personal services, and the transactions were closed in the several taxable years in which the payments were made. The advance payments in those

---

[1] "Contracts to sell" as distinguished from "Contracts of sale" or "Sales in praesenti" are executory contracts intended to pass title to goods from the vendor to the vendee at some future time. See sec. 1, Uniform Sales Act; Comp. Stat. New Jersey, 1910, pp. 4647–4665.

cases constituted gross income when received, and the fact that deductions might be accrued or paid in a subsequent year when the services, or a part of them, were rendered, did not prevent the inclusion of the payments in taxable income for the year when they were received. In the instant case the transactions were executory contingent contracts for the sale of unascertained goods, and they were in no sense closed transactions. The deposits made incident to these transactions would be gross income only if they represented gains from closed and completed sales, or at least from contracts of sale. Since they were not gains from such sales, they were not gross income, and, therefore, were not taxable to petitioner in 1943.

From the practical standpoint, the deposits made with petitioner by its customers in advance of sales were equivalent to a forced temporary advance by the customers to petitioner's working capital. By reason of conditions prevailing in 1943 petitioner, instead of buying coal and coke at wholesale with its own capital and then selling at retail to its customers, thus recovering its capital plus a realization of profit, arranged, in effect, for its customers to advance the capital with which it purchased the coal and coke at wholesale. In this analysis the facts are not unlike those in *Summit Coal Co.*, 18 B. T. A. 983. As in that case, the advances or loans of capital repayable by deliveries of coal did not constitute gross taxable income in the year in which its advances or loans were made, but, as we said in the cited case, p. 988, "these advances became income to petitioner only as and when recoupment was made from deliveries."

The issue presented is decided in favor of petitioner. In view of the fact that another adjustment in petitioner's tax liability for the taxable year has been made by respondent and is not here in issue.

*Decision will be entered under Rule 50.*