Prichard Funeral Home, Inc. v. Commissioner.
Prichard Funeral Home v. Comm'r
Docket No. 92135.
United States Tax Court
T.C. Memo 1962-259; 1962 Tax Ct. Memo LEXIS 49; 21 T.C.M. (CCH) 1399; T.C.M. (RIA) 62259; November 5, 1962
Theodore Tenny, Esq., 706 Commerce Bldg., Kansas City, Mo., for the petitioner. William T. Holloran, Esq., and Hugh C. McMahon, Esq., for the respondent. FAY
Memorandum Findings of Fact and Opinion FAY, Judge: The respondent has determined the following deficiencies in the income tax of the petitioner: Taxable Period or Year
Deficiency
1/1/57-8/31/57
$1,331.53
9/1/57-8/31/58
659.89
9/1/58-8/31/59
601.00
The only issues for our consideration concern (1) whether the amounts received by petitioner during the taxable period ended August 31, 1957, and the taxable year ended August 31, 1959, as advance payments on funeral services which were to be rendered *50 by petitioner in the future are includable in petitioner's gross income in the years of receipt and (2) whether the petitioner erred in carrying forward a net operating loss sustained in 1956 to the fiscal years 1957, 1958 and 1959 without first carrying such loss back to the years 1954 and 1955. Findings of Fact Some of the facts have been stipulated and are incorporated herein by this reference. Petitioner, a Missouri corporation, was organized in 1952 and maintains its principal place of business in Excelsior Springs, Missouri. It filed its corporate Federal income tax returns during the period 1954 to 1959, inclusive, with the district director of internal revenue at Kansas City, Missouri. Petitioner's return for the taxable period January 1, 1957, to August 31, 1957, was filed on February 4, 1958. The petitioner since the date of its incorporation has been engaged in the business of providing funeral services. Lindell K. Jarman was the petitioner's president and a principal shareholder. Ralph Van Landingham was the petitioner's vice-president and also a principal shareholder. Jarman and Van Landingham together owned approximately 96 percent of the petitioner's stock. The *51 remainder of petitioner's stock was owned equally by the wives of Jarman and Van Landingham. During the years and/or periods at issue in this case, the petitioner kept its books and filed its income tax returns on the accrual method of accounting. On September 17, 1957, and December 8, 1958, the petitioner received payments of $1,000 and $1,200, respectively, from Jesse Rowland and his wife. The money represented a prepayment of the Rowlands' anticipated, but as yet not required, funeral expenses. Between September 2, 1958, and August 7, 1959, petitioner received payments totaling $73.60 from one Nettie Gant. The money represented a prepayment of Nettie's anticipated, but as yet not required, funeral expenses. Between April 24, 1959, and August 11, 1959, the petitioner received payments totalling $390 from one Mamie Myers. The money represented a prepayment of the anticipated, but as yet not required, funeral expenses of one Dorothy Pauline Myers. No contractual restrictions were placed on the petitioner with regard to its use of the moneys received or the manner in which the funds were to be held. The petitioner was not directed by the payors as to how the funds were to be *52 held and as to what disposition was to be made of them. The petitioner would have refunded the amounts received by it had the payors so demanded, but petitioner was under no contractual obligation to do so or to make a refund at any fixed date. Petitioner established a savings account No. XXXX entitled "Prichard Funeral Home, Inc. Future Need Fund" with the Excelsior Springs Savings & Loan Association, Excelsior Springs, Missouri. The first deposit in this account was made on September 17, 1957, and was in the amount of $1,000. Payments received by petitioner from the aforementioned payors were either deposited in this account or in petitioner's checking account. Most of the funeral expense prepayments received by petitioner were eventually deposited in account No. XXXX. Interest accruing on the deposits in account No. XXXX was withdrawn by petitioner and deposited in its general bank account. On May 11, 1959, petitioner borrowed the amount of $2,098.17 from the Excelsior Springs Savings & Loan Association. As security for this loan petitioner pledged the funds deposited in account No. XXXX. The proceeds of the loan were used by petitioner to purchase stock listed on the New *53 York Stock Exchange. On July 6, 1959, petitioner withdrew $2,115.64 from account No. XXXX and used said funds to repay its loan from Excelsior Springs Savings & Loan Association and interest which had accrued of $17.47. The amounts received by petitioner as prepaid funeral expenses were not included in petitioner's income in the years in which the payments were received. On its Federal income tax returns for the taxable years 1954 and 1955 petitioner reported as taxable income the amounts of $5,845.55 and $165.85, respectively. On its Federal income tax return for the taxable year 1956 petitioner reported a net operating loss of $7,695.07. On its Federal income tax return for the taxable period January 1, 1957, to August 31, 1957, petitioner reported a taxable income of $5,195.28 before claiming any net operating loss deduction. Petitioner claimed a net operating loss carryover deduction in the total amount of $7,695.07, which included the total amount of the net operating loss for the taxable year ended December 31, 1956. In arriving at the net operating loss carryover deduction for the taxable period ended August 31, 1957, petitioner did not carry back to the preceding taxable *54 years 1954 and 1955 any part of the 1956 net operating loss, but only carried said loss forward to the taxable period ended August 31, 1957. On its Federal income tax return for the taxable year ended August 31, 1958, petitioner reported a taxable income of $2,199.64 before claiming any net operating loss deduction. Petitioner claimed a net operating loss carryover deduction in the amount of $2,572.96, which represents the unused portion of the 1956 net operating loss deduction remaining after the loss was carried over to the taxable period ended August 31, 1957. In arriving at the amount of the net operating loss carryover deduction for the taxable year ended August 31, 1958, the petitioner did not first carry back to the taxable years 1954 and 1955 any part of the 1956 net operating loss, but only carried said loss forward. On its Federal income tax return for the taxable year ended August 31, 1959, petitioner reported a taxable income of $2,674.35 before claiming any net operating loss deduction. Petitioner claimed a net operating loss carryover deduction in the amount of $373.32, which represents the unused portion of the 1956 net operating loss deduction remaining after the *55 loss was carried over to the taxable period ended August 31, 1957, and taxable year ended August 31, 1958. In arriving at the amount of the net operating loss deduction for the taxable year ended August 31, 1959, the petitioner did not first carry back to the taxable years 1954 and 1955 any part of the 1956 net operating loss but only carried said loss forward to the taxable years 1957, 1958 and 1959. Respondent determined that the petitioner had additional income for the taxable period ended August 31, 1957, and for the taxable year ended August 31, 1959, by reason of its receipt from customers of funds which represented prepaid funeral costs. Accordingly, respondent increased petitioner's income for the taxable period ended August 31, 1957, by $1,000 and for the taxable year ended August 31, 1959, by $1,630. [1]
Respondent *56 determined further that for the taxable period ended August 31, 1957, petitioner was entitled to a net operating loss in the amount of $1,683.67 in lieu of the $7,695.07 claimed by petitioner on its return, and that for the taxable years ended August 31, 1958, and August 31, 1959, petitioner was entitled to no net operating loss deduction in lieu of the respective amounts of $2,572.96 and $373.32 claimed by petitioner on its returns for these years. Opinion Petitioner is engaged in the business of providing funeral services. From time to time petitioner received payments for funeral services which were to be rendered at some indefinite time in the future. The respondent determined that these prepaid funeral expenses were includable in petitioner's income in the year of receipt. Petitioner contends that such payments do not become income until the year in which petitioner actually renders the funeral services to the payor. This Court, as well as numerous other courts, has consistently taken the position that the respondent has authority to require that prepaid income be reported no later than the year in which it is received provided such income is subject to unrestricted use *57 by the taxpayer. Automobile Club of New York, Inc., 32 T.C. 906, 911 (1959), affd. 304 F. 2d 781 (C.A. 2, 1962); Krim-Ko Corporation, 16 T.C. 31 (1951); Curtis R. Andrews, 23 T.C. 1026 (1955); South Dade Farms v. Commissioner, 138 F. 2d 818 (C.A. 5, 1943), affirming a Memorandum Opinion of the Board of Tax Appeals; Brown v. Helvering, 291 U.S. 193 (1934); Automobile Club v. Commissioner, 353 U.S. 180 (1957). The salient facts in the instant case demonstrate clearly that the amounts received by petitioner as prepaid funeral expenses were subject to no limitation, contractual or otherwise, as to their disposition, use or enjoyment by the petitioner. The payors did not request or require petitioner to segregate the amounts paid in separate bank accounts or in any other manner. Furthermore, there is no evidence in the record to indicate that the payors intended petitioner to act merely as either their agent, conduit, trustee or depository with respect to the funds. Krim-Ko Corporation, supra. To the contrary, it is evident that petitioner considered itself to be the sole owner *58 of the funds. It received for its own benefit the interest earned upon the deposited funds, and it later used the bank account for such funds as collateral and utilized the funds to pay off an indebtedness occasioned by its purchase of certain common stocks. The petitioner in order to sustain its position places considerable reliance upon the fact that the payors had the right at any time to demand a refund of the prepayments. The identical argument was proffered by the taxpayers in Brown v. Helvering, supra. The Supreme Court in rejecting this argument said, "But the mere fact that some portion of it might have to be refunded in some future year in the event of cancellation * * * did not affect its quality as income." See also South Tacoma Motor Co., 3 T.C. 411 (1944); and Curtis R. Andrews, supra. The cases cited by petitioner [2] in which the taxpayer was allowed to postpone the reporting of receipts to a later taxable period involved contracts to sell property and not contracts primarily for the rendition of personal services. The distinction between these cases as it applied to the issue of when advance payments are includable in income *59 was noted and explained in Veenstra & DeHaan Coal Co., 11 T.C. 964, 967 (1948). We conclude for the reasons above indicated that the amounts received by petitioner as prepaid funeral expenses were properly the subject of taxation in the year of receipt. However, our conclusion is not entirely dispositive of the issue in this case. It appears that the first and only payment in 1957 representing a prepaid funeral expense was received by petitioner from Jesse Rowland and his wife on September 17, 1957. [3] The respondent in his notice of deficiency determined that the $1,000 was includable in petitioner's income for the taxable period ended August 31, 1957. Since the petitioner did not receive the $1,000 prepaid funeral expense until September 17, 1957, we believe the respondent's determination that such amount is includable in petitioner's income for the taxable period ended August 31, 1957, is in error. *60 Respondent is sustained with regard to its determination for the taxable year ended August 31, 1959. The second issue in this case concerns the proper treatment of a net operating loss sustained by petitioner for the taxable year ended August 31, 1956. The petitioner in computing the amount of the net operating loss carryover deduction available to it for the taxable period ended August 31, 1957, failed to carry back the 1956 net operating loss first to the taxable years 1954 and 1955 even though it reported taxable income in both of those years. Respondent determined that before the petitioner can carry over its 1956 net operating loss to the taxable year 1957 it must first carry the net operating loss back to the taxable years 1954 and 1955. We believe the *61 respondent's position is correct. Section 172(b) of the Internal Revenue Code of 1954 provides, in pertinent part, as follows: (b) Net Operating Loss Carrybacks and Carryovers. - (1) Years To Which Loss May Be Carried. - A net operating loss for any taxable year ending after December 31, 1953, shall be - (A) a net operating loss carryback to each of the 2 taxable years preceding the taxable year of such loss and, (B) a net operating loss carryover to each of the 5 taxable years following the taxable year of such loss. (2) Amount Of Carrybacks And Carryovers. - Except as provided in subsection (f), the entire amount of the net operating loss for any taxable year (hereinafter in this section referred to as the "loss year") shall be carried to the earliest of the 7 taxable years to which (by reason of subparagraphs (A) and (B) of paragraph (1)) such loss may be carried. The portion of such loss which shall be carried to each of the other 6 taxable years shall be the excess, if any, of the amount of such loss over the sum of the taxable income for each of the prior taxable years to which such loss may be carried. * * * Section 172(b)(2) is unambiguous *62 and states in mandatory fashion that the entire amount of the net operating loss for any taxable year shall be carried to the earliest of the seven taxable years to which such loss may be carried. Petitioner's contention, which was raised for the first time on brief, that the respondent's determination for the taxable period ended August 31, 1957, is barred by the statute of limitations [4] is without merit. Although the bar of the statute of limitations must be pleaded timely to be availed of as a defense, R. G. Robinson, 12 T.C. 246 (1949), affd. other grounds 181 F. 2d 17 (C.A. 5, 1950), it is clear from the record that the notice of deficiency was mailed within three years of the date the petitioner filed its return. The evidence discloses that petitioner's return for the taxable period ended August 31, 1957, was received by the district director on February 4, 1958, and that the notice of deficiency was mailed on February 2, 1961.
*63 Petitioner's plea that the Fourteenth Amendment to the Constitution of the United States prohibits the respondent's action in this case is also without merit. The Fourteenth Amendment constitutes a limitation on the powers of the States, but not on those of the Federal Government. Munn v. Illinois, 94 U.S. 113 (1876). Decision will be entered under Rule 50. Footnotes
1. The records introduced at the trial of this case disclosed that for the taxable year ended August 31, 1959, petitioner received prepayments totalling $1,663.60. The respondent, in his notice of deficiency, increased petitioner's income by only $1,630. Since the discrepancy is de minimis and favors the petitioner, we will accept the respondent's figure.↩
2. Bourne v. Commissioner, 62 F. 2d 648 (C.A. 4, 1933) (advance payment on executory contract to purchase land); Woodlawn Park Cemetery Co., 16 T.C. 1067↩ (1951) (advance payments to acquire burial space in a mausoleum to be constructed).
3. A receipt furnished the Rowlands by petitioner's vice-president stated that the $1,000 was received on September 17, 1957. Furthermore, the petitioner's special savings account for the prepaid expense funds, account No. XXXX, was opened on September 17, 1957, with an initial deposit of $1,000. No evidence was submitted to the effect that petitioner had received prepaid funeral expense funds prior to September 17, 1957.A receipt furnished the Rowlands by petitioner's vice-president stated that the $1,000 was received on September 17, 1957. Furthermore, the petitioner's special savings account for the prepaid expense funds, account No. XXXX, was opened on September 17, 1957, with an initial deposit of $1,000. No evidence was submitted to the effect that petitioner had received prepaid funeral expense funds prior to September 17, 1957.↩
4. SEC. 6501. LIMITATIONS ON ASSESSMENT AND COLLECTION. (a) General Rule. - Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed) * * *.↩