Modernaire Interiors, Inc. v. Commissioner.
Modernaire Interiors, Inc. v. Commissioner
Docket No. 2174-66.
United States Tax Court
T.C. Memo 1968-252; 1968 Tax Ct. Memo LEXIS 46; 27 T.C.M. (CCH) 1334; T.C.M. (RIA) 68252; October 30, 1968. Filed. *46 Petitioner accepted orders for furniture to be made to order for its customers and required deposits of a part of the price. It carried the deposits on its books as liabilities and deferred expensing of the cost until delivery. Held: (1) The deposits are taxable when received; (2) Petitioner is not entitled to a deduction for costs of the furniture on order. Jack B. Phelphs, 719 Fulton Federal Bldg., Atlanta, Ga., for the petitioner. J. Larry Broyles, for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: Respondent determined deficiencies in income tax for the fiscal years ended September 30, 1962, and September 30, 1963, in the respective amounts of $4,916.07 and $1,556.96. The issues for decision are: (1) whether certain deposits made by petitioner's customers on contracts for custom-made *47 furniture to be manufactured constituted taxable income to petitioner, an accrual basis corporation, at the time the deposits were made and, (2) if so, whether deductions were allowable to petitioner at that time for cost of goods sold under such contracts. Findings of Fact The stipulation of facts and the exhibits attached thereto are incorporated by reference. The petitioner is a corporation organized under the laws of the State of Georgia on October 5, 1961. Its principal place of business has at all times been in Atlanta, Georgia. Its books are kept and its Federal income tax returns are prepared on an accrual basis and for fiscal years ending September 30. It filed Federal income tax returns for fiscal years ended in 1962 and 1963 with the district director of internal revenue at Atlanta. Petitioner's principal business is the sale of furniture at retail. It carries furniture in stock for sale and represents over 300 manufacturers. The phase of its business which is involved in the issues in this case is the acceptance of orders for custom-made furniture. When a customer desires to have furniture made to order, petitioner shows samples from its stock or from the manufacturers' *48 catalogues. The customer specifies the types, sizes, and styles desired, chooses kinds of wood and materials, and places an order. An order form (or agreement) is prepared describing the items to be made. This form includes the following statements: NOTE: All items ordered are made as per customer's special instructions and same are not subject to cancellation or change. Items will be shipped as near to the date requested as possible and otherwise, when ready. We cannot be held responsible for delays due to conditions beyond our control. All orders are subject to acceptance by our office. Title to the merchandise being purchased under this order is retained in Modernaire Furniture until payment of the full purchase price set out above. The agreement is sometimes, but not always, signed by the customer. On all such special order items, petitioner requests 1335 the customer to make a deposit and attempts to obtain a deposit equal to the cost to petitioner of the merchandise. After receiving the order and the deposit, petitioner places an order with one of the manufacturers. After 3 or 4 days, this order may not be cancelled. The deposits are placed in petitioner's regular *49 bank account. There is no restriction upon the use or disposition of the deposited funds by petitioner. The customers' deposits on special order furniture to be manufactured for them are carried on petitioner's books as liabilities until the furniture is received and delivered to the customer or the customer is notified that it is available for delivery. The balances due from the customers on such orders are not carried on the books as accounts receivable until delivery to the customer of the merchandise. Petitioner defers the expensing of costs on such items until they are received from the manufacturer. The actual prices of the items to petitioner can be determined from the manufacturers' price lists. On some occasions customers have refused to accept delivery and have demanded refunds of their deposits. The petitioner has granted such requests for the sake of good business relations. In the fiscal year ended in 1962 the petitioner made 6 refunds, amounting to a total of $735.37 of deposits on custom furniture orders. In the fiscal year ended in 1963, it made 20 such refunds, amounting to $2,164.25. It made 2 refunds, amounting to $141.45 after September 30, 1963, on orders *50 pending on that date. Petitioner's income tax returns showed the following: *10
Fiscal Year Ending
1962
1963
Gross Receipts
$123,117.20
$254,294.27
Cost of Goods Sold
74,671.75
169,050.52
Gross Profit
48,445.45
85,243.75
Other Income
663.84
581.34
Total Income
49,109.29
85,825.09
Deductions
47,800.39
74,007.36
Taxable Income 1,308.90
11,817.73
Inventories
$ 45,949.15
$ 49,198.79
On September 30, 1962, at the end of petitioner's first fiscal year, it had approximately 75 unfilled orders for custom-made items, upon which the customers had made deposits aggregating $16,386.91. The balances which would become due from these customers upon delivery of these items amounted to $13,873.91. On September 30, 1963, petitioner had approximately 90 unfilled orders upon which its customers had made deposits aggregating $21,576.77. The balances on these orders amounted to $22,140.24. The amount of the customers' deposits held by petitioner on September 30, 1962, was not reported by petitioner as taxable income for the fiscal year ending on that date, nor was the increase of $5,189.86 in the account for such deposits as of September 30, 1963, reported *51 as taxable income for the fiscal year ending on that date. Opinion Petitioner accepted orders for furniture to be made to order for its customers by manufacturers. It secured deposits from the customers and treated the amounts thereof on its books as liabilities until the merchandise was received and delivered to the customer. Respondent determined that these deposits constituted taxable income to petitioner, an accrual basis taxpayer, when received. The amounts were received without restriction as to use or disposition and were used by petitioner in the ordinary course of its business. Respondent relies upon American Automobile Association v. United States, 367 U.S. 687 (1961), and Schlude v. Commissioner, 372 U.S. 128 (1963), holding that payments of membership dues entitling the members to certain services in the future, and payments for dance lessons to be provided subsequently, were taxable in the year in which they were received. The petitioner contends that gross receipts are not necessarily income, and that the mere receipt of a deposit from its customer under an executory contract for having an item made by a third party to the customer's *52 order does not require accrual thereof as income until the contract is carried out and the costs are known and can properly be expensed. Petitioner says that the American Automobile Association and Schlude cases, supra, are distinguished on the ground that they involved contracts for the performance of services rather than, as here, sales of merchandise not yet manufactured. Petitioner argues that it did not have possession or title to the furniture until delivered by the manufacturer and that the sales were not completed and consummated until delivery was made to the customer. Petitioner cites and relies upon Veenstra & DeHaan Coal Co., 11 T.C. 964 (1948), Acq. C.B. 1949-1, 4, and Woodlawn Park Cemetery Co., 1336 16 T.C. 1067 (1951). Veenstra was in the business of buying coal and coke at wholesale and selling at retail. The products were in short supply and the taxpayer was able to obtain deposits from its customers to be applied on the price when and if the coal and coke was delivered to them. The balance of deposits at the end of the year 1943 was to be applied on the price of deliveries to be made the following year or refunded if the taxpayer *53 could not obtain the products. The taxpayer at that time did not know what the cost or selling price would be in 1944. The Court said: In the instant case the transactions were executory contingent contracts for the sale of unascertained goods, and they were in no sense closed transactions. The deposits made incident to these transactions would be gross income only if they represented gains from closed and completed sales, or at least from contracts of sale. Since they were not gains from such sales, they were not gross income, and, therefore, were not taxable to petitioner in 1943. In Woodlawn Park Cemetery Co., supra, the taxpayer was planning to build an additional unit to its mausoleum and entered into contracts for sale of burial space therein. The contracts did not require the company to complete the construction and it could refund the purchasers' deposits and be relieved of liability. Also, the purchasers could under certain conditions refuse to accept the space offered, and be entitled to a refund. The Court noted that a sales agreement from which either party may withdraw is not a completed sale and that the contracts at that time were executory and contingent contracts *54 to sell and not completed sales. The Court held, following Veenstra & De Haan Coal Co., supra, that no part of the deposits made by purchasers under these contracts was taxable income to the taxpayer in the years received, which were prior to completion of construction and before the costs of building were ascertainable. Petitioner also cites Consolidated-Hammer Dry Plate & Film Company v. Commissioner, 317 F. 2d 829 (C.A. 7, 1963), reversing in part a Memorandum Opinion of this Court. This case concerned partial payments under defense department contracts for construction of equipment, which the Court of Appeals held were reportable as accrued income for tax purposes only when delivery and acceptance of the products were made. The Court noted that the partial payments were to be made prior to acceptance of the finished product and viewed them as attributes of a financing arrangement in the nature of a loan, the taxpayer's right to retain them being conditional or tentative until such final acceptance. The instant case is distinguishable on its facts from the foregoing cases relied upon by petitioner involving loans or restricted deposits. In the present case the *55 deposits are without restriction as to use by the petitioner and the petitioner is under no legal obligation to refund them. Clearly the customers intended them as payments for goods and not as loans subject to repayment. The following cases cited by respondent are more closely applicable to the facts presented in the instant case. In Wallace A. Moritz, 21 T.C. 622 (1954), it was held that deposits by customers on photographic portraits to be made were taxable when received even though the taxpayer had agreed to refund the deposit if the customer was not satisfied. The Court considered that the possibility of refunds was nothing more than a contingent liability which had no bearing on the taxpayer's right to the deposit when received. Veenstra & DeHaan Coal Co., supra, was held distinguishable. In the present case, the petitioner has not agreed, nor is it required, to grant a refund. In Chester Farrara, 44 T.C. 189 (1965), the taxpayer received weekly payments for suits to be selected and delivered at a later time. These payments were held to be taxable when received. The Court distinguished the Veenstra & DeHaan and Consolidated-Hammer *56 cases, supra, pointing out that while those cases were concerned with sales of goods, it was evident "that the amounts were regarded as deposits unlike the unrefundable amounts paid in the present case for merchandise to be selected and delivered at a later time." In the present case, the goods were already selected and contracted for by petitioner on behalf of the customer. In Hagen Advertising Displays, Inc., 47 T.C. 139 (1966), (appeal pending, C.A. 6), the taxpayer received advances from customers from whom it had firm orders for signs for which the payments were made. The taxpayer argued, as does the petitioner here, that there can be no gross income until the cost of the goods can 1337 be determined and deducted, and that the principle of accrual of income upon receipt is not applicable when the receipt is for goods yet to be delivered. The Court rejected this argument and said that the payments were part of the taxpayer's "total sales" from which was to be subtracted its "cost of goods sold" to determine its gross income for the year in which the amounts received were properly includable under the taxpayer's accrual method of accounting. The Veenstra & DeHaan, *57 Woodlawn Park, and Consolidated Hammer, supra, cases, relied upon by the respective taxpayers there as well as here, were held distinguishable. The Court also said that nothing in the applicable regulation defining gross income ( Sec. 1.61-3(a), Income Tax Regs.) suggests that an attempt must be made to match a particular purchase with a particular sale or a particular item in inventory. The Court sustained the respondent in including the advance payments as income when received. The petitioner is not keeping its books upon a completed contract method of accounting under which a matching of income and related expenses might be appropriate. Under either a cash or an accrual method of accounting there is no assurance that there will be a complete correlation between items of income and related deductions. Marquardt Corporation, 39 T.C. 443, 453 (1962). See also New England Tank Industries of New Hampshire, Inc., 50 T.C. 771 (1968), and Automobile Club of New York, Inc., 32 T.C. 906, 912-913 (1959), affd. 304 F. 2d 781 *58 (C.A. 2, 1962). We hold that respondent was correct in determining that the amounts deposited with petitioner by its customers were taxable as income when received. Artnell Co. v. Commissioner, - F. 2d - (C.A. 7, Sept. 19, 1968), reversing 48 T.C. 411 (1967), is distinguishable and does not require a different conclusion. In that case, the taxpayer, Chicago White Sox, Inc., which employed an accrual method of accounting, deferred income received from the preseason sale of tickets and related items for baseball games scheduled to be played after the taxable (7 months) period involved. The Tax Court sustained the Commissioner's determination that such income should be included in gross income for the taxable period. The Seventh Circuit held that the Tax Court erred in deciding that these revenues were income when received regardless of the merits of the accounting method employed and remanded the case for further hearing to determine whether the White Sox's method of accounting did not clearly reflect its income in its final (7 months) taxable year. The Artnell case is clearly distinguishable from the instant case on the facts. In that case there was an allocation of *59 specific sums of advance payments to exact baseball game dates. Here, the extent and time of performance are not so certain. At the hearing, pursuant to leave granted by the Court, the petitioner amended its petition to allege in the alternative that, if it is determined that the deposits from customers constitute taxable income when received, respondent erred in failing to allow a deduction for cost of goods sold either to the extent of the contract price or the amount of the deposit. In its reply brief petitioner includes a computation of the gross profit which it says was realized from the contracts involved in the customers' deposits held at the end of each fiscal year and suggests that its taxable income should be redetermined under Tax Court Rule 50 in accordance with this computation. The computation, however, is not in evidence, nor are all the figures upon which it is based. While it is stipulated that petitioner's actual cost of the merchandise on the customers' orders was reflected by manufacturers' price lists which were used for determining petitioner's selling prices of the merchandise, petitioner has represented no evidence showing the actual manufacturers' prices *60 of the specific items on order as of the end of each taxable year. Rule 50 "is not to be regarded as affording an opportunity for retrial or reconsideration." Harry Hartley, 23 T.C. 353, 359 (1954). Whether the petitioner at the time of receiving a deposit could properly have accrued on its books as an expense the amount it was to pay the manufacturer upon the item ordered for the customer need not be decided. There is no sufficient evidence presented in the record to support an offsetting expense deduction. Decision will be entered for the respondent. 1338