T.C. Memo. 2015-177

UNITED STATES TAX COURT

HARVEY FRIEDMAN AND GLORIA FRIEDMAN, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 3095-14.                    Filed September 10, 2015.

Mark Robert Vogel, for petitioners.

Michelle M. Robles, William L. Blagg, and Brian A. Pfeifer, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

NEGA, Judge:  By notice of deficiency dated November 15, 2013,
respondent determined a deficiency of $43,146 in petitioners' 2010 Federal
income tax and an accuracy-related penalty of $8,629 under section 6662(a).[1]  The

_____

[1]All section references are to the Internal Revenue Code in effect for the
(continued...)

[*2] issues[2] for decision are whether petitioners (1) received interest income of $197,521 in 2010 and (2) are liable for an accuracy-related penalty pursuant to section 6662(a).

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. Harvey Friedman and Gloria Friedman (Mrs. Friedman) resided in Florida at the time they filed their petition.

Petitioners' daughter, Kayla Friedman, was the president, secretary, and owner of Distinct Advantage Premium Finance, Inc. (Distinct), during 2010. Mrs. Friedman served as treasurer and vice president of Distinct during 2010. Distinct was in the business of financing insurance premiums. On April 1, 2003, Mr. Friedman lent Distinct $887,000 (2003 loan). On April 1, 2007, petitioners, through their living trust, lent Distinct $4 million (2007 loan). Both loans were evidenced by promissory notes which called for interest-only payments. The 2003

---

[1](...continued)
year at issue. All Rule references are to the Tax Court Rules of Practice and Procedure. All monetary amounts are rounded to the nearest dollar.

[2]Petitioners' liability for the alternative minimum tax is computational and will be resolved in accordance with the decision of the Court.

[*3] loan bore interest at a rate of 8% whereas the 2007 loan bore interest at a rate of 9%.

Distinct wrote a check for $3,335 to Mr. Friedman each month during 2010, totaling $40,021. Each check was signed by Kayla Friedman and indicated in the memo line that it was for "Interest". All of the checks to Mr. Friedman were deposited into petitioners' joint bank account during 2010. Distinct also wrote a check for $13,125 to Mrs. Friedman each month during 2010, totaling $157,500. Each check was signed by Kayla Friedman and indicated in the memo line that it was for "Interest on Note Payable". All of the checks written to Mrs. Friedman were deposited into petitioners' joint bank account during 2010.

Distinct recorded the amounts paid to petitioners during 2010 as interest expense payments in its general ledger. On its 2010 Form 1120S, U.S. Income Tax Return for an S Corporation, Distinct claimed an interest expense deduction for the $197,521 paid to petitioners. Distinct continued to operate after 2010 and made payments to petitioners totaling approximately $2 million in 2013. Distinct filed articles of dissolution with the Florida Department of State Division of Corporations on May 12, 2014.

Petitioners did not provide the Court with any information relating to Distinct's assets at any point before, during, or after 2010. Petitioners did not

[*4] present any evidence that they took steps to enforce collection of the 2003 loan or the 2007 loan. Likewise, petitioners did not show that attempts to collect either the 2003 loan or the 2007 loan would have been futile during 2010.

Petitioners claim that Distinct was defrauded by two separate insurance agents from 2008 to 2011 and that, as a result of the fraud, they were certain that they would never recover the full amounts of their loans to Distinct. Petitioners did not provide any corroborating documentation as to the dates and dollar amounts of the purported fraud. Kayla Friedman testified that Douglas Terry Dean defrauded Distinct of approximately $1 million in 2008 and 2009 and that James A. Mecha defrauded Distinct of approximately $2 million in 2010 and 2011. Petitioners provided the Court with a grand jury indictment of Mr. Mecha from the Circuit Court of DuPage County, Illinois. The grand jury indictment does not specify the exact dollar amount attributable to Mr. Mecha's fraud on Distinct but charges him with theft by deception of more than $1 million. Petitioners did not provide the Court with any information regarding attempts by Distinct to collect any amounts from Mr. Dean or Mr. Mecha. In sum, petitioners have not provided an adequate basis for the Court to find that fraud upon Distinct occurred, or if it did, that Distinct would not have had adequate funds with which to repay petitioners.

**[*5]** Of the $197,521 petitioners received from Distinct in 2010, they reported $73,371 as interest income. Petitioners did not report the remaining $124,150 as interest income. Petitioners also claimed a capital loss deduction of $3,000 on their 2010 Federal income tax return.

## OPINION

### I. Burden of Proof

The Commissioner's determination as to a taxpayer's tax liability is generally presumed correct, and the taxpayer bears the burden of proving otherwise. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). However, because our conclusions are based on the preponderance of evidence, we need not decide whether petitioners or respondent bears the burden of proof with regard to petitioners' deficiency. See Knudsen v. Commissioner, 131 T.C. 185, 189 (2008).

### II. Interest Income

Section 61(a)(4) generally requires taxpayers to include in gross income all income from whatever source derived, including interest income. Interest income includes interest on a promissory note. Sec. 1.61-7(a), Income Tax Regs. Returns of capital do not constitute gross income. Doyle v. Mitchell Bros. Co., 247 U.S.

**[\*6]** 179, 185 (1918); <u>Veenstra & De Haan Coal Co. v. Commissioner</u>, 11 T.C. 964, 966 (1948).

Section 166(a) and (d) permits individuals to deduct capital losses for nonbusiness debts that become worthless within the tax year. The timing of worthlessness is a question of fact that must be determined by examining all circumstances. <u>Dallmeyer v. Commissioner</u>, 14 T.C. 1282, 1291 (1950). Relevant considerations of whether a debt has become worthless include the solvency of the debtor and efforts to collect the debt. <u>Aston v. Commissioner</u>, 109 T.C. 400, 415 (1997). Individual taxpayers may deduct losses from the sale or exchange of capital assets only to the extent of their gains from such sales or exchanges plus (if such losses exceed such gains) the lower of $3,000 or the excess of such losses over such gains. <u>See</u> sec. 1211.

Although Distinct (1) credited the payments to petitioners as interest payments in its general ledger, (2) claimed interest expense deductions for the payments on its 2010 tax return, and (3) indicated in the memo line of each check that the payment was "interest", and further, although Mrs. Friedman served as treasurer and vice president of Distinct during 2010, petitioners argue that the payments they received from Distinct during 2010 were not interest but rather a return of capital.

**[*7]** Petitioners rely on the open transaction doctrine, also known as the cost recovery method, to support their argument that the payments were not interest.[3] Their argument is premised on their claim of Distinct's being defrauded from 2008 to 2011; they claim that they "knew instantly in 2009 or 2010" that they would not be able to recover their loan principal amounts and thus decided to treat the payments as a return of capital. Assuming arguendo that Distinct suffered fraud, the open transaction doctrine does not support petitioners' argument that the payments received in 2010 were not interest.

Petitioners rely heavily on the Supreme Court's formulation of the open transaction doctrine in Burnet v. Logan, 283 U.S. 404 (1931), which applied the open transaction doctrine to deferred payment transactions where the realization of income is uncertain or contingent. This Court has applied the open transaction doctrine "only in rare and extraordinary circumstances" where property is considered not to have an ascertainable fair market value. See, e.g., Estate of Wiggins v. Commissioner, 72 T.C. 701, 708 (1979) ("In the event that fair market

_____

[3]Petitioners' argument includes citations of cases that are wholly inapplicable to their case, including cases involving accrual basis taxpayers, recharacterization of interest in a bankruptcy case, and treatment of payments received where taxpayers were defrauded under Ponzi schemes. In the interest of judicial economy, we decline to address in any detail petitioners' arguments regarding these cases.

[*8] value of property received cannot be determined, the transaction remains open for Federal income tax purposes and the taxpayer is entitled to report his gain under the cost recovery method." (citing Burnet v. Logan, 283 U.S. 404, and McShain v. Commissioner, 71 T.C. 998 (1979))). Most cases in which this Court has applied the open transaction doctrine involve property other than cash or interests in property that are highly speculative. See Weigl v. Commissioner, 84 T.C. 1192 (1985); McShain v. Commissioner, 71 T.C. 998; Westphal v. Commissioner, T.C. Memo. 1984-363.

The transactions in the aforementioned cases have virtually no similarities to the facts at hand. The loan transaction entered into with Distinct was not of the type where the property to be received did not have an ascertainable fair market value. In contrast petitioners received regular payments of defined dollar amounts in accordance with the terms of the underlying loans and promissory notes. See Underhill v. Commissioner, 45 T.C. 489 (1966) (finding the open transaction doctrine did not apply where the amounts required to be paid were fixed and the obligation to pay was not subject to a prior condition). Payments were made in the same exact amount, were almost always made on the first of each month, and bore roughly the same proportion to each other as did the original principal amounts of the two loans. These factors weigh in favor of finding a debtor-creditor

[*9] relationship with petitioners' receiving regular payments of interest income. See, e.g., Clark v. Commissioner, 18 T.C. 780, 783 (1952), aff'd per curiam, 205 F.2d 353 (2d Cir. 1953); Meier v. Commissioner, T.C. Memo. 2003-94.

Accordingly, we agree with respondent that the payments from Distinct to petitioners in 2010 were interest income. Our decision is in accord with Distinct's treatment of the payments as interest and with petitioners' treatment of a portion of the payments as interest income on their 2010 Federal income tax return, which directly contradicts their argument that they should be allowed to treat the payments as a return of capital.

Since petitioners claimed a $3,000 capital loss deduction on their 2010 Federal income tax return, they are not entitled to deduct any additional losses for nonbusiness bad debts for that year. Secs. 166, 1211(b). Petitioners have also not shown that their loans to Distinct became worthless in 2010. They have not provided any evidence regarding their efforts to collect the loans, nor did they provide any documentation that would support Kayla Friedman's and Mr. Friedman's unsubstantiated testimony regarding Distinct's financial situation during 2010.

**[*10]** III.    <u>Section 6662(a) Penalty</u>

Generally, the Commissioner bears the burden of production with respect to any penalty, including the accuracy-related penalty.  Sec. 7491(c); <u>Higbee v. Commissioner</u>, 116 T.C. 438, 446 (2001).  To meet that burden, the Commissioner must come forward with sufficient evidence indicating that it is appropriate to impose the relevant penalty.  <u>Higbee v. Commissioner</u>, 116 T.C. at 446.  However, once the Commissioner has met the burden of production, the burden of proof remains with the taxpayer, including the burden of proving that the penalty is inappropriate.  <u>See</u> Rule 142(a); <u>Higbee v. Commissioner</u>, 116 T.C. at 446-449.

Section 6662(a) and (b)(1) and (2) imposes a penalty equal to 20% of any portion of an underpayment that is attributable to, inter alia, negligence or disregard of rules or regulations or any substantial understatement of income tax.  Because we find that there was an underpayment attributable to a substantial understatement of income tax under section 6662(a), we do not need to determine whether the underpayment was attributable to negligence or disregard of rules or regulations.

Section 6662(d)(1) defines a substantial understatement as an understatement that exceeds the greater of 10% of the tax required to be shown on the return for the taxable year or $5,000.  Section 6662(d)(2)(A) defines

**[\*11]** "understatement" as the excess of the amount of tax required to be shown on the return for the taxable year over the amount of tax imposed which is shown on the return.

The amount of tax shown on petitioners' 2010 Federal income tax return was $42,563. The amount of tax required to be shown on their 2010 return is $85,709. The understatement is $43,146, which exceeds 10% of the tax required to be shown on the tax year 2010 return, $8,571, which is greater than $5,000. The understatement is substantial for purposes of the section 6662(a) accuracy-related penalty. We conclude that respondent met his burden of production in showing that petitioners substantially understated their income tax for the 2010 taxable year.

An understatement may be reduced to the extent it is attributable to an item (1) for which there is or was substantial authority for the taxpayer's tax treatment of the item or (2) with respect to which the taxpayer discloses the relevant facts affecting the item's tax treatment in the return or in a statement attached to the return and there was a reasonable basis for the taxpayer's tax treatment of the item. Sec. 6662(d)(2)(B). The substantial authority standard under section 6662(d)(2)(B)(i) is "an objective standard involving an analysis of the law and application of the law to relevant facts." Sec. 1.6662-4(d)(2), Income Tax Regs.

[*12] Substantial authority exists only when the weight of the authorities supporting the treatment of the tax item is substantial in relation to the weight of the authorities supporting contrary treatment. Id. subpara. (3)(i). If there is substantial authority for the tax treatment of an item, the tax attributable to the item is not included in the calculation of the understatement under section 6662(d). Id. subpara. (1). The taxpayer bears the burden of proving that substantial authority or reasonable cause supports the position taken in the taxpayer's return. Higbee v. Commissioner, 116 T.C. at 446.

Petitioners direct us to the caselaw and Internal Revenue Service pronouncements--including a field service advice memorandum, chief counsel advice memoranda, and revenue rulings--cited in their briefs as support for their argument that substantial authority supports their exclusion of $124,150 in interest income from their 2010 tax return. Petitioners do not actually cite any authority in the section of their answering brief addressing the section 6662(a) penalty, but we assume they would have us rely on the authorities cited elsewhere in their briefs as being substantial authority sufficient to excuse them from the penalty. To that end, petitioners do not meet their burden of proving that substantial authority supports the position taken on their 2010 tax return because most, if not all, of the cases they cite in their briefs are inapposite to the receipt of interest payments on a

**[\*13]** loan agreement.  The weight of the authorities definitely does not support their tax treatment of the payments received in 2010.  Accordingly, petitioners have not shown that substantial authority exists, and we agree that imposition of the section 6662(a) penalty is appropriate.

In reaching our holding, we have considered all arguments made, and, to the extent not mentioned above, we conclude they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.