**PARKCHESTER BEACH CLUB CORP.,**
Petitioner on Review,

v.

**COMMISSIONER OF INTERNAL REV-
ENUE, Respondent on Review.**

No. 441, Docket 28760.

United States Court of Appeals
Second Circuit.

Argued May 7, 1964.

Decided Aug. 3, 1964.

Jacob I. Goodstein, New York City
(Benjamin Wm. Mehlman, New York
City, on the brief), for petitioner.

Norman H. Wolfe, Dept. of Justice,
Washington, D. C. (Louis F. Oberdorfer,
Asst. Atty. Gen., Lee A. Jackson and
Harry Baum, Attys., Dept. of Justice,
Washington, D. C., on the brief), for
respondent.

Before WATERMAN and FRIENDLY,
Circuit Judges, and ANDERSON, Dis-
trict Judge.

ANDERSON, District Judge.

The taxpayer, Parkchester Beach Club
Corp., owned approximately thirty acres
of real property in the Borough of the
Bronx, New York City, which it used in
the operation of its business of furnish-
ing park and recreational facilities, in-
cluding a beach, swimming pool, picnic
area, tennis courts, handball courts,
basketball courts, and eating places.
These services and facilities were avail-
able only to members of Shorehaven
Beach Club, Inc., a non-profit membership
corporation. The taxpayer was the solici-
tation and collection agent for member-
ships in Shorehaven. The season during
which the services and facilities were

available to the members was from May 30th through the week after the following Labor Day.

There was considerable demand for Parkchester facilities and, in order to be certain of a reservation for the use of them, many of the members made an advance payment of the annual membership dues and the fees for the other services and facilities, including roomettes or lockers, in the fall of the year preceding the calendar year in which the season actually commenced. The so-called roomettes or lockers were actually a space about the size of a telephone booth, in which a member, in common with others who were assigned space in the same roomette or locker, could hang his or her clothes.

Parkchester kept its books and filed its income tax returns on an accrual method of accounting and on the basis of a fiscal year ending March 31st. After the final audit of its books, after March 31st of each year, it treated the bookkeeping profit as shown on the books of Shorehaven as rental income to Parkchester. The income tax returns here in question concern the fiscal years ending March 31, 1954, 1955, 1956 and 1957, during which Parkchester and Shorehaven were to all intents and purposes the same operating entity.

The taxpayer did not report on its income tax returns for the years in question the receipt of membership dues and roomette or locker fees paid in advance for the use of the Parkchester services and facilities for the following season, which came within the next fiscal year; but it did report these payments as income for the fiscal year within which the services and facilities were actually furnished. The Commissioner of Internal Revenue, however, determined that the amounts received by the petitioner as advance membership dues and the fees for other services and facilities, including roomettes or lockers, constituted taxable income to the taxpayer for the fiscal year in which it actually received the money.

The Tax Court affirmed and it is from this judgment, which also included the approval of the imposition of a penalty for the tardy filing of the 1957 return, that the taxpayer appeals. The appeal does not appear to question the Tax Court's determination as to the taxability of the advance payment of "membership dues" in the year of receipt, but does question the inclusion as taxable income in such year of the fees paid in advance for other services and facilities.

The taxpayer asserts that the moneys paid in advance did not become taxable income until the next fiscal year when claims for refund could no longer be made and when it actually supplied the services or facilities. Its accounting was kept on this basis. Parkchester asserts that as an accrual basis taxpayer, cash receipts, paid to it in advance, cannot be held to constitute taxable income unless they are correlated in time with the rendering of the services or furnishing of the facilities for which the payments are made. While this method of accounting may be reasonable and sound for the taxpayer's own purposes in the conduct of its business and is generally in accord with accepted accrual accounting principles, the Commissioner of Internal Revenue has ruled that such a system "does not clearly reflect the income," and has required, under the authority of 26 U.S.C. § 446 (1958 ed.),[1] that, for tax purposes, such receipts be included as part of the taxable income of the fiscal year in which they were actually received.

1. Internal Revenue Code of 1954:
Sec. 446 (26 U.S.C. § 446, 1958 ed.) "General rule for methods of accounting.
"(a) *General Rule.*—Taxable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books.

"(b) *Exceptions.*—If no method of accounting has been regularly used by the taxpayer, or if the method used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary or his delegate, does clearly reflect income."

The Supreme Court, closely divided, has twice passed upon this question. In American Automobile Ass'n v. United States, 367 U.S. 687, 81 S.Ct. 1727, 6 L. Ed.2d 1109 (1960), it held that membership dues paid in one calendar accounting year to the association, a national automobile club, for services to be provided to the members in the following calendar year must be included as income in the calendar year of their actual receipt. In Schlude, et ux. v. Commissioner, 372 U.S. 128, 83 S.Ct. 601, 9 L.Ed.2d 633 (1962), it held that fees paid by students, pursuant to contracts for dancing lessons to be given over a period of years, must be included in the taxpayer's return, where its accounting was kept on a fiscal-year accrual basis, in the year in which the payments were actually made, even though the dancing lessons for which the payments were made were actually given in subsequent fiscal years.

In these cases the Supreme Court upholds the statutory authority of the Commissioner to require an accounting for tax purposes which reflects as taxable income payments made in advance in one fiscal year for services or facilities to be furnished in the following year, and concludes that such an exercise of authority by the Commissioner is consistent with Congressional intent. American Automobile Ass'n v. United States, supra, 367 U.S. at p. 694, 81 S.Ct. 1727, et seq. and Schlude, et ux. v. Commissioner, supra, 372 U.S. at p. 134 and p. 135, 83 S.Ct. 601.

Parkchester seeks to distinguish the present case from those decisions. It lays considerable emphasis on the Supreme Court's use of the word "dues" and takes the position that, while the membership dues paid to it in advance may come within the holding of American Automobile Ass'n and Schlude, the fees paid in advance for other services and facilities, including roomette or locker space, do not. It claims that these fees were actually either refundable deposits on rentals or real property or trust funds in the hands of the taxpayer or were nothing

more than payments which accompanied applications and did not become converted into income in the taxpayer's hands until it had accepted the applications.

The Tax Court concluded, however, that the evidence presented disclosed that the monies paid were simply advance payments made by the members in one fiscal year for membership, services and facilities to be furnished them by the taxpayer in the next fiscal year. There was obviously no way to ascertain or estimate with reasonable accuracy in the fiscal year in which the advance payments were made how much the taxpayer would be required to expend in the next fiscal year to furnish the services and facilities previously paid for. Automobile Club of New York, Inc. v. C.I.R., 304 F.2d 781 (2 Cir. 1962).

■ The taxpayer cannot, by calling the payments something other than dues, take the transaction outside of the scope of the principles which the Supreme Court enunciated in American Automobile Ass'n and Schlude. There is no evidence to support the taxpayer's claim that the payments were for a leasehold interest in real property or that they were trust funds. The use of a locker or roomette in common with other people cannot be said to create an interest in real estate; and Parkchester had the complete unrestricted use of the advance payments and commingled them with its own funds. We see no reason to disturb the Tax Court's conclusions.

■ As the accounting system used by Parkchester is virtually identical in principle to those used in American Automobile Ass'n and Schlude, the rejection of which by the Commissioner were upheld by the Supreme Court, we must conclude that the Tax Court was correct in upholding the determination by the Commissioner that Parkchester's accrual accounting method "does not clearly reflect the income" for the fiscal years in question and that it must accrue and report amounts received from members for services and facilities to be furnished in the

following fiscal years, as gross income for the taxable years in which the amounts were received.

 The taxpayer also appeals from the imposition of a penalty because of its failure to file a timely income tax return for the taxable year ending March 31, 1957, as authorized by Title 26 U.S.C. (1958 ed.) § 6651(a) and (b).[2] The taxpayer seeks to bring itself within the escape clause which says that the penalty is to be imposed "unless it is shown that such failure is due to reasonable cause and not due to willful neglect, * * *" The only justification which it offers for its claim is that its certified public accountant prepared a petition for an extension of time a week before the due date of the return. He left it on the desk of the president of the taxpayer at its place of business. Evidently he forgot about it and the president did nothing about it, so that it was still there and unexecuted when the accountant returned on June 16th, one day after the due date. It was, however, placed in the mail on that date. It was received by the Commissioner on June 24, 1957 and was denied. The burden is on the taxpayer to show reasonable cause. Berlin v. C.I.R., 59 F.2d 996, 997 (2 Cir. 1932); Credit Bureau of Greater New York v. C.I.R., 162 F.2d 7, 9 (2 Cir. 1947); Breland v. United States, 323 F.2d 492, 497–498 (5 Cir. 1963). There is no error in the Tax Court's conclusion that Parkchester failed to meet that burden. The taxpayer offered no explanation at all as to the late filing of the return itself. It simply sought to explain why a request for extension was not filed on time. There is nothing in the circumstances of the taxpayer's claim of justification for not filing on time which would support a finding of reasonable cause.

The decision of the Tax Court is affirmed.

---

2. Internal Revenue Code of 1954:
Sec. 6651 (26 U.S.C. § 6651, 1958 ed.)
"Failure to file tax return
"(a) *Addition to the Tax.*—In case of failure to file any return required under authority of subchapter A of chapter 61 (other than part III thereof) * * * on the date prescribed therefor (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate.

"(b) *Penalty Imposed on Net Amount Due.*—For purposes of subsection (a), the amount of tax required to be shown on the return shall be reduced by the amount of any part of the tax which is paid on or before the date prescribed for payment of the tax and by the amount of any credit against the tax which may be claimed upon the return."