Wide Acres Rest Home Inc. v. Commissioner.
Wide Acres Rest Home, Inc. v. Commissioner
Docket No. 4632-65.
United States Tax Court
T.C. Memo 1967-79; 1967 Tax Ct. Memo LEXIS 180; 26 T.C.M. (CCH) 391; T.C.M. (RIA) 67079; April 17, 1967
James M. Keith, 100 North, Pittsfield, Mass., for the petitioner. Robert B. Dugan, for the respondent. RAUM
Memorandum Findings of Fact and Opinion RAUM, Judge: The Commissioner determined a deficiency in the income tax of petitioner Wide Acres Rest Home Inc. for the taxable year 1963 in the amount of $4,768.50. The only question is whether petitioner was required to include in income in the taxable year of receipt the entire fair market value of stock received in that year in consideration for the lifetime care of an elderly patient at its rest home, or whether petitioner properly deferred that portion of the stock which it determined was not *181 "earned" in the year of receipt. The facts have been stipulated. Petitioner, a Massachusetts corporation having its principal place of business in Sheffield, Massachusetts, filed its income tax return for the taxable year 1963 with the district director of internal revenue, Boston, Massachusetts. Petitioner is engaged in the operation of a rest home for the care and maintenance of elderly and incapacitated persons. It has consistently maintained its books and records on an accrual basis. On June 4, 1963, petitioner accepted as a patient a Mrs. Fannie Bastow. On July 23, 1963, petitioner, by Mrs. Cora Reed, its president and treasurer, entered into an agreement with Richard Welch and Lawrence L. Welch, brothers of Mrs. Bastow, concerning the consideration to be paid for the future care of Mrs. Bastow. The agreement provided: That * * * (petitioner) will furnish suitable and adequate care and maintenance to FANNIE BASTOW during her lifetime. That * * * (petitioner) shall provide all medical care, including medicines and medication for FANNIE BASTOW during her lifetime. That * * * (petitioner) shall furnish all necessary hospitalization at an accredited hospital for FANNIE BASTOW *182 during her lifetime. That * * * (petitioner) shall provide for a proper and suitable burial for FANNIE BASTOW * * *. Pursuant to the agreement and in consideration for this undertaking, the brothers of Fannie Bastow delivered to petitioner, in the taxable year 1963, 150 shares of American Telephone and Telegraph Company stock which had a fair market value of $18,375. Nothing in the agreement placed any condition or restriction on petitioner's use or disposition of these shares. Certain life insurance and health and accident insurance contracts together with the right to all social security benefits were also conveyed to petitioner as additional consideration. When Mrs. Bastow entered the rest home, some seven weeks prior to the agreement of July 23, 1963, the rate agreed to for her care was $80 a week. However, no mention of that rate or any other rate was made in the agreement, which, fairly construed, superseded the earlier arrangement and substituted the consideration specified in the agreement for Mrs. Bastow's lifetime care, regardless of the length of her remaining life. In filing its income tax return for 1963, petitioner did not include the $18,375 full value of the *183 stock in its gross income, but reported only $2,480 thereof on the theory that Mrs. Bastow had been a patient for only 31 weeks during 1963, and that only $2,480 (31 times $80 per week) was "earned" in 1963. The remaining $15,895 was carried on petitioner's books at the close of the year 1963 as "Unearned Rest Home Income." The Commissioner included the full value of the stock in petitioner's 1963 income and determined the deficiency accordingly. We hold that his action was correct. The law in this field has been clearly and firmly settled: where there has been actual receipt of income, a taxpayer, even one on an accrual basis, may not, in the absence of specific statutory authorization, defer reporting such income until a later year on the theory that it has not yet been "earned" by the performance of services, delivery of goods, or the giving of other consideration. Schlude v. Commissioner, 372 U.S. 128; American Automobile Association v. United States, 367 U.S. 687; Automobile Club of New York v. Commissioner, 304 F. 2d 781 (C.A. 2), affirming 32 T.C. 906; Parkchester Beach Club Corp. v. Commissioner, 335 F. 2d 478 *184 (C.A. 2); Bell Electric Co., 45 T.C. 158, 165-166; Chester Farrara, 44 T.C. 189; E. Morris Cox, 43 T.C. 448; Hagen Advertising Displays, Inc., 47 T.C. 139. The statutory exception to this rule covers a very limited area, relating to prepaid subscription income and certain prepaid dues (sections 455 and 456, Internal Revenue Code of 1954); it has been given a strict construction, cf. William O. McMahon, Inc., 45 T.C. 221, and there is no contention in the present case that the income involved falls within such exception. The general rule is plainly applicable here, and we can see no escape from the conclusion that the full value of the stock received by petitioner in 1963 must be included in its income for that year notwithstanding that it was obligated to render services therefor after 1963. Petitioner's efforts to overcome this result are not entirely clear, and we think that they amount to nothing more than a quibble. Thus, petitioner stresses the fact that in determining the deficiency, the Commissioner, after stating that the shares were received in 1963 in consideration of the agreement *185 to furnish lifetime care to Mrs. Bastow, made reference to section 1.61-8(b) of the Regulations which states in part: Gross income includes advance rentals, which must be included in income for the year of receipt regardless of the period covered or the method of accounting employed by the taxpayer. Petitioner then argues that the shares involved did not constitute "advance rentals", and that therefore it was presumably entitled to defer income until "earned" after 1963. The point is without merit. Wholly apart from the fact that the consideration received probably does include an element of rental, the issue in this case is whether the receipt, however characterized, should have been included in petitioner's 1963 income. The Commissioner's reference to "advance rentals", merely an example of prepaid income that must be reported when received, certainly does not preclude reliance upon the general rule applied in the Schlude and American Automobile Association cases. Further, the matter was in any event clarified by the Commissioner's Answer in this Court. Nor may it fairly be said that the Answer pleaded a new issue upon which the burden of proof shifted to the Government, for *186 it merely defined the existing issue more clearly or, at most, gave an additional reason to support the position previously taken. See Estate of Grace M. Scharf, 38 T.C. 15, 27-28, affirmed 316 F. 2d 625 (C.A. 7); Standard Oil Co., 43 B.T.A. 973, 997, 999, affirmed 129 F. 2d 363 (C.A. 7), certiorari denied, 317 U.S. 688. Petitioner also challenges the assumption that the stock was received by it unconditionally, without restriction as to use or disposition. But the record fails to support this contention. To the contrary, the agreement of July 23, 1963 contains no condition or restriction of any kind with respect to this stock. as we read that instrument, there was no impediment whatever to petitioner's free and unrestricted use of the stock. Although petitioner argues on brief, without any supporting evidence in the record, that its president and principal stockholder, Cora Reed, believed that she could not dispose of the stock until petitioner had "earned" it, such subjective belief plainly cannot be controlling in the absence of any legal restriction upon its use or disposition. If there were any restriction, contrary *187 to the plain tenor of the agreement itself, the burden was upon petitioner to prove it, and in the absence of such proof we must accept as a fact that no such restriction existed. Indeed the record affirmatively indicates that petitioner had the beneficial enjoyment of the stock, since the return filed by it disclosed the receipt of dividends therefrom. Accordingly, any inquiry as to whether the income has been "earned" becomes irrelevant under established law. See Schlude and related cases, cited above. Decision will be entered for the respondent.