**ARTNELL COMPANY, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 16586.**

United States Court of Appeals Seventh Circuit.

Sept. 19, 1968.

William A. Cromartie, William P. Sutter, Thomas R. Mulroy, Harvey C. Flodin, Chicago, Ill., Samuel H. Horne, Washington, D. C., for petitioner; Hop-kins, Sutter, Owen, Mulroy, Wentz & Davis, Chicago, Ill., of counsel.

Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, Harry Baum, Louis M. Kauder, Attys., Tax Division, Dept. of Justice, Washington, D. C., for respondent.

Before KILEY, SWYGERT and FAIRCHILD, Circuit Judges.

FAIRCHILD, Circuit Judge.

The tax court upheld the commissioner's determination of deficiencies,[1] and Artnell Company, transferee taxpayer, seeks review. The main question is whether prepayments for services (proceeds of advance sales of tickets for baseball games and revenues for related future services) must be treated as income when received or whether such treatment could be deferred by the accrual basis taxpayer until the games were played and other services rendered.

Early in the 1962 baseball season, as in previous seasons, the White Sox team was operated by Chicago White Sox, Inc. It sold season tickets and single admissions for later games. It received revenues for broadcasting and televising future games, and it sold season parking books. Its taxable year would normally have run to October 31, 1962. It employed the accrual method of accounting for its own and for income tax purposes.

Before May 31, 1962, Artnell Company had acquired all the stock in White Sox. On that date White Sox was liquidated. Artnell became the owner of all the assets and subject to all the liabilities. It continued to operate the team.

As of May 31, the balance sheet of White Sox showed as deferred unearned income that part of the amount received for season tickets, advance single admissions, radio, television, and season parking books, allocable to games to be played after May 31. As the games were played Artnell took into income

1. 48 T.C. 411.

the amounts of deferred unearned income allocated to each.

The White Sox income tax return for the taxable year ending May 31, 1962 (because of the liquidation) was filed by Artnell as transferee. The return did not include the deferred unearned income as gross income. The commissioner decided it must be included and determined deficiencies accordingly.

When a business receives money in exchange for its obligation to render service or deliver goods and the costs of performance are incurred in a later accounting period, treatment of the receipt as income tends to reflect an illusory or partially illusory gain for the period of receipt. Accountancy has techniques (e. g. deferral of income, reserves for expenses) for achieving a more realistic reflection. The degree to which such techniques are available under income tax statutes is a vexing question.[2]

The commissioner urges the simple answer "that deferral of income is a matter for Congress to permit and, until Congress acts, deferral must be disallowed." He stands on "the established rule that an accrual basis taxpayer must include in gross income in the year of receipt prepaid items for which services will be performed in a later year. The rule implements the annual accounting principle which is at the heart of the federal taxing statute and which forbids transactional accounting for income tax purposes, however sound such methods might be for financial and other purposes under commercial accounting practice."[3]

Artnell relies upon statutory language which requires computation of taxable income under the accrual method of accounting regularly used by the taxpayer unless such method "does not clearly reflect income."[4] This language could call for a factual determination in the individual case whether an accrual system which employs the deferral of income technique clearly reflects income. Artnell contends that the White Sox system does so.

The commissioner's principal contention, which was sustained by the tax court, is that there is a rule of law which rejects deferral of income. Presumably he believes that any system in which prepaid income is deferred "does not clearly reflect income" and would consider the present statutory provisions for deferral in the case of prepaid subscription income[5] and prepaid dues of certain membership organizations[6] extensions of legislative grace.

One could reason from the statutory language that any deferral of prepaid income which fulfills standards of sound accounting practice could be employed by an accrual basis taxpayer, and the commissioner would not have power to reject it. Three Supreme Court decisions, *Automobile Club of Michigan*,[7] *American Automobile Association*,[8] and *Schlude*[9] have made it clear that this is not the law.

There are two other lines of reasoning reflected in the three decisions cited. All three held, upon consideration of the particular facts, that the commissioner did not abuse his discretion in rejecting a deferral of income where the time

---

2. See Aland, Prepaid Income and Estimated Future Expenses, Jan. 1968 ABA Journal 84; Annotation: Income Taxes —Prepayment—When Income, 9 L.Ed.2d 1191.

3. The quotations are from the commissioner's brief.

4. 26 U.S.C. sec. 446.

5. 26 U.S.C. sec. 455.

6. 26 U.S.C. sec. 456.

7. Automobile Club of Michigan v. Commissioner of Internal Revenue (1957), 353 U.S. 180, 77 S.Ct. 707, 1 L.Ed.2d 746.

8. American Auto. Ass'n v. United States (1961), 367 U.S. 687, 81 S.Ct. 1727, 6 L.Ed.2d 1109.

9. Schlude v. Commissioner of Internal Revenue (1963), 372 U.S. 128, 83 S.Ct. 601, 9 L.Ed.2d 633.

and extent of performance of future services were uncertain. Thus in *Automobile Club of Michigan:* "The pro rata allocation of the membership dues in monthly amounts is purely artificial and bears no relation to the services which petitioner may in fact be called upon to render for the member." In *American Automobile Association:* "That 'irregularity,' however, is highly relevant to the clarity of an accounting system which defers receipt, as earned income, of dues to a taxable period in which no, some or all the services paid for by those dues may or may not be rendered." In *Schlude:* "The American Automobile Association Case rested upon an additional ground which is also controlling here. Relying upon Automobile Club of Michigan * * *, the Court rejected the taxpayer's system as artificial since the advance payments related to services which were to be performed only upon customers' demands without relation to fixed dates in the future. The system employed here suffers from that very same vice * * *." In *Schlude* the Court also found that certain expenses were deducted in the year the payments were received even though related income had been deferred to later periods.

The uncertainty stressed in those decisions is not present here. The deferred income was allocable to games which were to be played on a fixed schedule. Except for rain dates, there was certainty. We would have no difficulty distinguishing the instant case in this respect.

A second consideration is reflected in *American Automobile Association* and *Schlude.* It is that Congress is aware of the problem and that it is the policy of the Supreme Court to defer, where possible, to congressional procedures in the tax field. Thus in *American Automobile Association:* "At the very least, this background indicates congressional recognition of the complications inherent in the problem and its seriousness to the general revenues. We must leave to the Congress the fashioning of a

rule which, in any event, must have wide ramifications. * * * Finding only that, in light of existing provisions not specifically authorizing it, the exercise of the Commissioner's discretion in rejecting the Association's accounting system was not unsound, we need not anticipate what will be the product of further 'study of this entire problem.' " In *Schlude:* "Plainly, the considerations expressed in American Automobile Association are apposite here. We need only add here that since the American Automobile Association decision, a specific provision extending the deferral practice to certain membership corporations was enacted * * * continuing, at least so far, the congressional policy of treating this problem by precise provisions of narrow applicability. Consequently, as in the American Automobile Association Case, we invoke the 'long-established policy of the Court in deferring, where possible, to congressional procedures in the tax field,' and, as in that case, we cannot say that the Commissioner's rejection of the studio's deferral system was unsound."

Has the Supreme Court left an opening for a decision that under the facts of a particular case, the extent and time of future performance are so certain, and related items properly accounted for with such clarity, that a system of accounting involving deferral of prepaid income is found clearly to reflect income, and the commissioner's rejection deemed an abuse of discretion? Or has it decided that the commissioner has complete and unreviewable discretion to reject deferral of prepaid income where Congress has made no provision? The tax court apparently adopted the latter view, for it concluded "that the Supreme Court would reach the same decision regardless of the method used by the taxpayer for deferring prepaid income."

■ It is our best judgment that, although the policy of deferring, where possible, to congressional procedures in the tax field will cause the Supreme Court to accord the widest possible latitude to the commissioner's discretion,

there must be situations where the deferral technique will so clearly reflect income that the Court will find an abuse of discretion if the commissioner rejects it.

Prior to 1955 the commissioner permitted accrual basis publishers to defer unearned income from magazine subscriptions if they had consistently done so in the past. He refused to allow others to adopt the method.[10] In 1955 his refusal was held, by the tenth circuit, in *Beacon*,[11] to be an abuse of discretion. In *Automobile Club of Michigan*, the Supreme Court distinguished *Beacon*, on its facts, because "performance of the subscription, in most instances, was, in part, necessarily deferred until the publication dates after the tax year." The Court, however, expressed no opinion upon the correctness of *Beacon*. In 1958, Congress dealt specifically with the *Beacon* problem.[12] It is at least arguable that the deferral as income of prepaid admissions to events which will take place on a fixed schedule in a different taxable year is so similar to deferral of prepaid subscriptions that it would be an abuse of discretion to reject similar accounting treatment.

In any event the prepaid admission situation approaches much closer to certainty than the situations considered in *Automobile Club of Michigan, American Automobile Association,* or *Schlude*.

The instant case was presented to the tax court on a stipulation of facts. The parties agreed as to the amounts of prepaid revenue allocated to the games played after May 31. The stipulation does not set forth other facts from which it could be determined that all other relevant items were so treated in the White Sox method of accounting that the income attributable to the first seven months of its normal fiscal and taxable year was clearly reflected.

The commissioner now points out that Artnell failed to produce this evidence and argues here that we must affirm on that ground even if we disagree with the commissioner's primary contention.

We think, however, that the commissioner shares responsibility for the failure of proof, for he seems to have let the tax court judge believe that this was not an issue. The judge wrote: "Since the respondent does not contend that the petitioner's method for deferring the advance receipts fails to match properly income and related expenses, we must therefore decide whether prepaid income is taxable in the year received, regardless of the merits of the proposed method for deferring it."

We choose, however, not to base our decision on an inferred waiver of this issue by the commissioner. It is specially important in this area to have the facts carefully developed.

We conclude that the tax court erred in deciding that these revenues were income when received regardless of the merits of the method employed. There must be further hearing in the tax court to determine whether the White Sox method of accounting did clearly reflect its income in its final, seven month, taxable year.

Artnell raised another question, which we decide even though the answer will have practical importance only if the ultimate decision on deferral of income goes against Artnell.

Artnell contended that three portions of the proceeds of advance tickets sales were not income in any event. They are:

(1) Federal admissions tax formerly imposed by 26 U.S.C. sec. 4231. The tax court noted that White Sox was required by law to collect the tax from the purchaser and 26 U.S.C. sec. 7501 made

---

10. See I.T. 3369, 1940–1 Cum.Bull. 46, modified, Rev.Rul. 57–87, 1957–1 Cum. Bull. 507. See also Anno., 9 L.Ed.2d 1191, at 1201–03.

11. Beacon Publishing Company v. Commissioner of Internal Revenue (10th Cir., 1955), 218 F.2d 697.

12. 26 U.S.C. sec. 455.

the money so collected a special fund in trust for the United States, and decided in favor of Artnell. The point is not contested in this court.

(2) Municipal amusement tax. The city of Chicago imposed a license tax upon amusements. An amount equal to 3 percent of the gross receipts from admissions to games played in one month was to be paid by the tenth of the following month. There was no provision which would make White Sox the agent or trustee of a portion of the receipts for this purpose. The tax court concluded that White Sox became liable for the amount of the tax as the games were played and that no portion of the advance receipts should be excluded from gross income on this account.[13]

(3) Visiting team compensation. The constitution of the American League provided that the visiting club shall receive a specified amount each on all paid admissions. The home club must make this payment within one day after the last game of each series. The tax court concluded that these amounts were not held as an agent or trustee for the visiting teams and were not to be excluded from gross income on that account.[14]

■ When White Sox sold a ticket to a future game, the probability arose, subject to possible refund and similar contingencies, that when the game was played this sale would be reflected in White Sox' liability to the city and the visiting club. Although the amount of the liability which would arise was dependent on the sale, we think the tax court correctly decided that such liability was, for this purpose, similar in character to the other liabilities which would be incurred in fulfilling the obligation to the purchaser of the ticket. There was nothing which created any fiduciary duty with respect to the funds received. There was not even the creation of a

liability simultaneously with the sale. In the event that the question of exclusion from income of the municipal amusement tax and visiting team compensation becomes material we agree with the tax court that these items are not to be excluded.

The decision of the tax court is reversed and the cause remanded for further hearing consistent with this opinion.

---

13. See footnote 14, infra.

14. The tax court also held that all the events which would determine liability for the municipal tax and the compensation to the visiting team had not oc-

curred before May 31, 1962, and that therefore no deduction was allowable on an accrual basis. Artnell relies in this court solely on the proposition that these amounts were not income.