Artnell Company v. Commissioner.
Artnell Co. v. Commissioner
Docket No. 2780-64.
United States Tax Court
T.C. Memo 1970-85; 1970 Tax Ct. Memo LEXIS 278; 29 T.C.M. (CCH) 403; T.C.M. (RIA) 70085; April 13, 1970, Filed *278 Held, in accordance with the mandate and opinion of Artnell Company v. Commissioner 400 F. 2d 981 (C.A. 7, 1969), the petitioner may defer the taxation of certain prepaid income until it is earned. William A. Cromartie, William P. Sutter, and Harvey C. Flodin Suite 5200, One First National Plaza, Chicago, Ill., for the petitioner. James J. Gallagher, Jr., and Stanley L. Blend, for the respondent. SIMPSON
Memorandum Findings of Fact and Opinion SIMPSON, Judge: This case is now before the Court on remand from the United States Court of Appeals for the Seventh Circuit. The case was originally heard by this Court and decided in favor of the respondent ( Dec. 28,513, 48 T.C. 411 (1967)). Upon a *279 petition for review filed by the petitioner in the United States Court of Appeals for the Seventh Circuit, that court reversed the decision of this Court and remanded the case for further hearing consistent with its opinion 400 F. 2d 981 (1968)). Pursuant to the mandate of the Court of Appeals, a further hearing was held in this case. Thereafter, each party filed written briefs in support of its position. The Court of Appeals ruled that we erred in holding that an accrual method taxpayer can in no event defer the taxation of prepaid income beyond the taxable year in which it is received. The case was remanded so that we might consider "whether the White Sox method of accounting did clearly reflect its income in its final, seven month, taxable year." 400 F. 2d at 985. Supplemental Findings of Fact Some supplemental facts have been stipulated, and those facts are so found. The following table sets forth a summary of the expenses incurred in the operation of the Chicago White Sox baseball team, as reflected by the accounting records of Chicago White Sox, Inc. (White Sox), and the petitioner, for the periods November 1, 1961, to May 31, 1962 (the first *280 period), and June 1, 1962, to October 31, 1962 (the second period): First Period
Second Period
I. COST OF OPERATIONS
1. Salaries and Wages
(a) Salaries - players, coaches, & managers
$ 197,228.64
$ 449,855.01
(b) Salaries - option players
8,797.95
42,988.10
(c) Salaries - scouts
85,563.92
62,763.59
(d) Salaries - farm system - administrative
22,958.32
16,125.00
(e) Salaries - ticket sellers a
52,296.79
54,173.30
(f) Salaries - janitors, matrons - parking lot
57,692.15
104,636.00
(g) Admission - home games - commission to Sears Roebuck 1,206.00
11,130.42
Total
$ 425,743.77
$ 741,671.42
2. Players' Traveling Expenses
49,873.07
103,410.97
3. Spring Training
(a) Spring training expenses b
$ 81,624.37
$ 87.23
(b) Farm system - spring training
45,641.22
1,124.58
4. Uniform Expense c
13,045.74
2,802.04
5. Baseball, Bats - training supplies
3,314.97
7,629.35
6. Laundry and Cleaning
2,288.35
3,504.27
7. Doctors - Hospitals
5,271.43
4,462.42
8. Acquisition of Players' Contracts
66,650.00
906.423.00
9. Ushers and Gatemen
39,072.00
96,984.00
10. Watch Service
$ 19,987.28
$ 26,290.70
11. Insurance
(a) Insurance (General) d
37,117.62
26,253.10
(b) Employees Group insurance premiums 1,970.49
3,059.09
Total
$ 39,088.11
$ 29,312.19
12. Ticket Printing e
20,852.98
3,206.74
13. Licenses f
4,668.75
-0-
14. Electric Light and Power
7,291.95
16,313.00
15. Electric Service and Supplies
12,600.09
12,888.26
16. Water
538.64
3,036.00
17. Gas and Oil
2,324.43
477.96
18. Park Entertainment
8,370.00
17,770.00
19. Park Supplies, etc
18,145.91
20,092.16
20. Messenger Service
267.08
546.50
21. Fall Instruction Program
22,309.12
18,053.27
22. Minor League Expenses - working agreements
68,370.33
165,231.18
23. Farm System Administrative Expense
11,670.60
9,855.63
24. Scouts' Expenses
32,680.23
44,864.07
25. Bard's Room Expense
23,959.42
23,246.16
II. ADMINISTRATIVE AND GENERAL OVERHEAD EXPENSES (INDIRECT EXPENSES)
1. Compensation of Officers
$ 62,942.00
$ 50,416.60
2. Salaries and Wages (not deducted elsewhere)
79,799.00
61,385.60
3. Repairs g
75,969.00
26,720.06
4. Bad Debts
-0-
9,000.00
5. Taxes
73,160.00
58,035.39
6. Interest
3,461.00
12,262.25
7. Depreciation h
140,774.00
132,482.48
8. Advertising i
69,471.00
60,334.71
9. Pension Expense
-0-
131,500.50
10. Other 58,113.00
35,491.83
Total $1,496,580.84
$2,765,788.29
*281 404 *282 The White Sox and the petitioner deducted such expenses for Federal income tax purposes in the taxable years during which they were accrued for bookkeeping purposes. For the most part, a deduction was taken in the taxable year during which a clearly established liability for the expense was incurred and the amount of the liability was determinable with reasonable accuracy. The following table sets forth a comparative income statement for the Chicago White Sox baseball team for the first and second periods, as computed under the White Sox' method of accounting. The income statement for the first period is substantially identical to the computation of taxable income contained in the White Sox' tax return for its taxable year ending May 31, 1962. The income statement for the second period is a pro forma computation, reflecting the income the White Sox would have reported for such period under its method of accounting had it not been liquidated. [1]
*283 405 First Period
Second Period
Nov. 1, 1961- Oct. 31, 1962
Gross Receipts
$1,076,701.84
$3,121,060.51
$4,197,762.35
Cost of Operations
1,025,649.84
1,703,355.87
2,729,005.71
Gross Profit
$ 51,052.00
$1,417,704.64
$1,468,756.64
Interest, Rents, and Long-term Capital Gains 12,324.00
6,754.23
19,078.23
Adjusted Gross Profit
$ 63,376.00
$1,424,458.87
$1,487,834.87
Overhead and General Administrative Expenses (Indirect Expenses)
563,689.00
545,595.98
1,109,284.98
Net Income (Loss) $ (500,313.00)
$ 878,862.89
$ 378,549.89
During the 1962 baseball season, the White Sox had 68 scheduled home-playing dates, 21 of which were scheduled for dates prior to June 1, 1962. Opinion Initially, we held that section 446(b) of the Internal Revenue Code of 1954 permits the respondent to require that prepaid income be taxed in the year received. The Court of Appeals for the Seventh Circuit reversed our decision on the ground that taxation of prepaid income may be deferred beyond the year of receipt if the taxpayer's method of accounting otherwise clearly reflects income. The case has been remanded so that we might *284 consider whether the method of accounting of the White Sox clearly reflected income. For the reasons set forth in our earlier opinion in this case, we adopted a rule of tax accounting which may be different from the rule applied for purposes of financial or commercial accounting. As we understand the opinion of the Court of Appeals, we are to examine the White Sox' method of accounting and to determine whether such method clearly reflects its income, without any consideration of those reasons which led to the adoption of a different rule for tax accounting. In other words, we are to judge the White Sox' method by the standards commonly used for financial or commercial accounting purposes. Both parties frequently and boldly have asserted that their positions are in accordance with sound accounting principles, but neither party offered us any expert testimony as to how sound accounting principles should be applied in this case. Their failure to produce such expert testimony makes it necessary for us to act on the basis of our own concepts of sound accounting. This case presents an unusual situation. In years preceding and succeeding 1962, the taxable year of the White Sox operations *285 included an entire season so that the problem we have in this case does not arise. In such other years, it does not matter, for tax purposes, whether the receipts from the sale of season tickets and from radio and television rights are treated as income when received or whether they are reported as income when the games are played. It does matter for 1962 because the team was sold after the receipt of a substantial amount of the prepaid seasonal income but before most of the games were played. The purpose of the accrual method of accounting is to allow the matching in a single fiscal period of revenues and expenses attributable to economic activities carried on within such period. United States v. Anderson, 269 U.S. 422 (1926); Mooney Aircraft, Inc. v. United States 420 F. 2d 400 (C.A. 5, 1969); Surrey and Warren, Federal Income Taxation 458-459 (1962); American Institute of Certified Public Accountants, Accounting Research Bulletin No. 43, 105 (1961); Finney and Miller, Principles of Accounting, Intermediate, 183 (5th ed. 1958). Under this principle, it was appropriate *286 for the White Sox not to include in the first period all the seasonal income which it received during such period; the seasonal income properly attributable to the games to be played in the second period could be deferred until that period, if its method of accounting also properly treated the expenses related to the earning of such income. Although the respondent has reiterated some of the same arguments for taxing all income when received, those arguments are not relevant at this time in view of the decision of the Court of Appeals. Instead, the issue now before us is whether the White Sox' treatment of its expenses is consistent with the deferral of the prepaid seasonal income. During the first period, the White Sox had indirect expenses in the amount of $563,689.00, and during the second period, on a pro forma basis, such expenses amounted 406 to $545,595.98. These included the salaries of officers and certain other employees, repairs, advertising expenses, and depreciation. It may be appropriate to allocate such expenses on the basis of time, and not on the basis of the games played. At least, we are not prepared to say that the White Sox acted improperly because they failed *287 to allocate such expenses to the games when played, and that they are not entitled to defer the prepaid seasonal income because of their failure to allocate these expenses in such manner. The White Sox incurred and deducted during the first period operating costs in the amount of $1,025,649.84, and according to our pro forma computation, their operating expenses during the second period were $1,703,355.87. This allocation of operating expenses roughly corresponds to the division of the income-producing activities between the two periods. Twenty-one home games were played in the first period, approximately 31 percent of the total, and 47 home games were played in the second period, approximately 69 percent of the total; whereas, 38 percent of the operating expenses fell in the first period, and 62 percent in the second period. However, some portion of the operating expenses that were deducted in the first period should have been allocated to the second period. Such expenses include the salaries of the ticket sellers, spring training expenses, uniform expenses, and the costs of ticket printing. If such expenses were spread ratably over the games played, more of them would have been *288 allocated to the second period. Thus, the White Sox' treatment of these items of expense did not conform to an ideal method of accounting. As an alternative to the method of accounting used by the White Sox, the respondent asks us to approve the method which he would adopt for the White Sox. Under the respondent's method, all the prepaid seasonal income is included in the first period. Whereas the use of the White Sox' method resulted in a gross profit from operations of $51,052.00 for the first period and $1,417,704.64 for the second period, the use of the respondent's method would shift most of that profit to the first period - $1,005,076.00 in the first period, and $463,680.64 in the second period. When all expenses and income are considered, the White Sox' method resulted in a loss of $500,313.00 for the first period and a profit of $878,862.89 for the second period. The respondent's method resulted in a profit of $453,711.00 for the first period and a loss of $75,161.11 for the second period. Since most of the income-producing activities occurred in the second period, it seems clear that the use of the respondent's method also falls short of properly reflecting the income of *289 the White Sox' operations. The net effect is a profit for the two periods, but that profit is allocated to the first period by the respondent's method when only approximately one-third of the income-producing activities then took place. In this case, the respondent asks us to approve of his method of accounting because the White Sox' method does not perfectly match the income and expenses, but the respondent's method also does not match income and expenses; in fact, it does not match them nearly as well as does the White Sox' method. The petitioner has the burden of proof, and although it has failed to prove that the White Sox' method of accounting perfectly reflected its income, it has shown that the respondent's method is erroneous. See Helvering v. Taylor, 293 U.S. 507 (1935). Often, we accept the respondent's judgment in the selection of a method of accounting that will clearly reflect income, but there is no justification for doing so when his method clearly is less desirable than that of the petitioner. See Brown v. Helvering, 291 U.S. 193 (1934); Lucas v. Ox Fibre Brush Co., 281 U.S. 115 (1930); Harden v. Commissioner, 223 F. 2d 418 *290 (C.A. 10, 1955), revg. 21 T.C. 781 (1954); Fort Pitt Brewing Co. v. Commissioner, 210 F. 2d 6 (C.A. 3, 1954), affg. 20 T.C. 1 (1953), cert. denied 347 U.S. 989 (1954); Russell v. Commissioner 45 F. 2d 100 (C.A. 1, 1930), revg. 12 B.T.A. 56 (1928). We have no basis on which to determine that only a portion of the prepaid seasonal income should be deferred, nor is there any authority for holding that some of the expenses which became fixed and determinable during the first period should be deferred. Accordingly, under the mandate of the Court of Appeals, we hold that the White Sox acted properly in not including in its taxable year ending May 31, 1962, the prepaid seasonal income allocable to the games to be played thereafter. In order to reflect the agreement of the parties as to other adjustments, Decision will be entered under Rule 50. 407 Footnotes
a. These expenses were paid to the staffs of ticket-selling facilities and to individuals who promoted the sale of tickets. ↩
b. These expenses were incurred prior to the start of the regular baseball season for the purpose of determining which players would be on the opening team roster and to enable those players to condition themselves for the playing of the regular 1962 season games. ↩
c. Each year the team purchases new uniforms for wear by the players during the regular season. Thereafter, new uniforms are purchased to supplement or replace existing stocks. ↩
d. Insurance policies were purchased for the following purposes: Fire and Extended Coverages - ball park and contents; Fire and Extended Coverages - scoreboard; Liability and Accident; Fidelity Bond; Comprehensive General Liability; Workmen's Compensation, etc. ↩
e. Tickets for regular 1962 season games were printed prior to the start of the season; additional printing of tickets took place during the season as required. ↩
f. These amounts were paid to obtain a 1962 City of Chicago Public Place of Amusement License and a City of Chicago Public Garage, Class 2, License. ↩
g. These expenses were incurred in painting, decorating and repairing the ball park. ↩
h. These deductions represent depreciation of ball park and related facilities, automobiles and trucks, and rental property. ↩
i. These expenses were incurred in advertising the regular 1962 season games and were paid to advertising agencies, printers, newspapers, etc.↩
1. By virtue of the White Sox' liquidation, the petitioner acquired a basis of $5,797,787 in player contracts. Of this amount, $555,840 was amortized by the petitioner in the second period. Additionally, the petitioner acquired a steppedup basis in certain depreciable property owned by the White Sox. For the second period, the petitioner incurred depreciation expense of $132,482.48 in respect of such depreciable property. These are the only items in the return of the petitioner with respect to the White Sox division which differ from the pro forma income statement for the second period.↩