STANDARD TELEVISION TUBE CORPORATION, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 9115-72.     Filed May 19, 1975.

---

*Alfred D. Howell,* for the petitioner.
*James D. Thomas,* for the respondent.

GOFFE, *Judge:* The Commissioner determined deficiencies in petitioner's Federal income tax as follows:

| TYE Sept. 30— | Deficiency |
|---|---|
| 1968 | $7,262.93 |
| 1969 | 40,296.44 |

Some of the issues have been settled. The only issue for decision is whether petitioner is entitled to exclude from gross sales, as of the end of its taxable years ended September 30, 1968, and September 30, 1969, additions to a reserve for estimated future costs to be incurred in the replacement of television picture tubes pursuant to warranty contracts and, with respect to its taxable year ended September 30, 1969, whether it may also increase the cost of goods sold by additions to the reserve for similar estimated future costs.

### FINDINGS OF FACT

Some of the facts have been stipulated. The stipulation of facts and exhibits are incorporated by this reference.

Petitioner is a corporation organized under the laws of Oklahoma in 1958. Its principal place of business at the time of filing its petition was in Oklahoma City, Okla. During the taxable years in question and in all prior taxable years, petitioner maintained its books and records on the accrual method of accounting. It filed Federal income tax returns for the taxable years ended September 30, 1968, and September 30, 1969, with the Internal Revenue Service Center, Austin, Tex.

Petitioner was engaged in the business of selling television picture tube warranty contracts which provided for the replacement of television picture tubes in the event of the failure of a tube after the expiration of the original manufacturer's warranty. The warranty contracts covered new television sets sold by dealers who sold the warranty contract to the customers on behalf of petitioner at the time of the sale of the sets.

Each warranty contract was uniform in providing solely for the replacement of the television picture tube. The contracts did not

cover any service charge, installation fee, transportation cost, or any other type of cost. The contracts varied only as to the length of the additional warranty purchased and commencement date, determined by the length of the original manufacturer's warranty. The different warranty contracts sold by petitioner were as follows:

| Type of tube | Original manufacturer's warranty | Additional period of warranty purchased |
|---|---|---|
| Black and white | 1 year | 2 years |
| Color | 1 year | 2 years |
| Color | 2 years | 3 years |
| Color | 2 years | 1 year |
| Color | 3 years | 2 years |

During the taxable year ended September 30, 1966, and through the taxable years in question, petitioner collected the entire sales price of each television picture tube warranty contract at the time the contract was sold and executed, even though the warranty period extended beyond the taxable year of sale and execution.

During the taxable years ended in 1968 and 1969, each warranty contract sold by petitioner required performance by petitioner only if the picture tube covered by the contract failed after the expiration of the manufacturer's warranty.

Based on its estimate of the cost in future years of fulfilling its obligations under the warranty contracts, petitioner decreased its total sales by a debit entry to sales and a corresponding credit entry to an account entitled "Reserve for Tube Replacement." The reduction in sales was $23,212.08 and $40,265.77 for the taxable years ended September 30, 1968, and September 30, 1969, respectively, and the gross sales reported on petitioner's Federal income tax returns for such years were, therefore, reduced in such amounts. In addition to decreasing the total sales for 1969 by $40,265.77, petitioner increased the amount of the cost of goods sold by debiting the cost of goods sold and crediting the "Reserve for Tube Replacement" in the amount of $41,787.92. The taxable income for the taxable year ended September 30, 1969, was, therefore, in effect reduced by $82,053.69 due to such estimated future costs. Prior to the taxable year ended September 30, 1968, petitioner reported the entire amount of gross sales received from the sale of warranty contracts on its Federal income tax return in the year the

contracts were sold without estimating the future costs of fulfilling its obligations.

Robert W. Trice, executive vice president and officer in charge of the extended warranty contract business of petitioner, determined the need for the "Reserve for Tube Replacement" account and the amounts to be credited to that reserve for both of the taxable years involved. He has been employed by petitioner as an officer since 1958 and his business skills involve the remanufacture of television picture tubes. He was conversant with the engineering and performance of all types and brands of new television picture tubes. The estimated charges to the reserve were based upon his experience with and knowledge of television picture tubes, statistics on the life of such tubes, the volume of warranty contract sales during each year, and the number of such contracts outstanding at the end of each year. Petitioner's duty to replace a picture tube under the contract existed only upon the demand of the holder of the warranty contract and it was not related to a fixed performance date.

The total gross receipts from the sale of the warranty contracts for the taxable years ended September 30, 1968, and September 30, 1969, were $134,636 and $277,265, respectively. The gross receipts from the warranty contracts were available for general corporate use and no part was segregated from general corporate funds.

The Commissioner, in his statutory notice of deficiency, determined that—

The "Reserve for Tube Warranty Replacements" is denied because the Internal Revenue Code contains no specific provision for excluding income or deducting anticipated costs through the medium of crediting such amounts to a reserve account. Further, the deferral of income constitutes a change to your method of accounting without the required consent of the Commissioner. * * *

OPINION

Petitioner seeks to exclude from income portions it has determined to represent costs it may incur in the future in performing under warranty contracts sold in the current taxable year. The deferral of reporting prepaid income on the theory that it has not yet been "earned" by the performance of services, delivery of goods, or the giving of other consideration has been continually rejected. *Schlude v. Commissioner,* 372 U.S. 128 (1963); *American Automobile Assn. v. United States,* 367 U.S. 687

(1961); *Automobile Club of New York, Inc. v. Commissioner,* 304 F.2d 781 (2d Cir. 1962), affg. 32 T.C. 906 (1959); *Parkchester Beach Club Corp. v. Commissioner,* 335 F.2d 478 (2d Cir. 1964), affg. a Memorandum Opinion of this Court; *Bell Electric Co.,* 45 T.C. 158, 165-166 (1965); *Chester Farrara,* 44 T.C. 189 (1965); *E. Morris Cox,* 43 T.C. 448 (1965); *Hagen Advertising Displays, Inc.,* 47 T.C. 139 (1966), affd. 407 F.2d 1105 (6th Cir. 1969). Since there were "lots of possibilities" for the time required for performance by petitioner, if indeed petitioner was required to perform at all under a given contract, we are not confronted with the certainty of performance involved in *Artnell Co. v. Commissioner,* 400 F.2d 981 (7th Cir. 1968), revg. and remanding 48 T.C. 411 (1967). Likewise, we are not concerned with refundable deposits. See *Veenstra & DeHaan Coal Co.,* 11 T.C. 964 (1948); *Consolidated-Hammer Dry Plate & Film Co. v. Commissioner,* 317 F.2d 829 (7th Cir. 1963).

We are urged, as was the Supreme Court, that under generally accepted accounting principles prepaid income should be prorated over the period of performance. Nonetheless, the Supreme Court has consistently held that income is taxable in the year when it is received. See, e.g., *American Automobile Assn. v. Commissioner, supra.*

Although *Bell Electric Co., supra,* was concerned with warranty contracts which provided for a mixture of services and goods, our statement there, sustaining respondent, is equally applicable in this instance.

We think that *American Automobile Association* and *Schlude* are controlling in the present case. We reject as unsound petitioner's attempt to distinguish those cases on the ground that the warranties herein are third-party obligations on the part of Electric and Air Conditioning. This is a completely irrelevant circumstance, for the basic question is simply whether a taxpayer may exclude from current income amounts actually received or accrued merely because future expenditures may offset such amounts in part or in whole. The statute does not permit the deferral of such income to be offset in a later year by expenses incurred in that later year; nor does it permit the same result to be reached by excluding a portion of the receipts from current income through the medium of crediting such excluded amounts to a reserve for future expenditures which are thus in effect deducted prior to the time they are actually made or incurred. Cf. *Brown* v. *Helvering,* 291 U.S. 193, 201-202. And this is so regardless of whether its obligation is direct or otherwise. [45 T.C. at 166.]

Petitioner urges reconsideration of our past decisions based upon recent pronouncements of the Commissioner authorizing

limited deferral of services income under Rev. Proc. 71-21, 1971-2 C.B. 549, modifying and superseding Rev. Proc. 70-21, 1970-2 C.B. 501, and income from the sale of goods under section 1.451-5, Income Tax Regs. Rev. Proc. 71-21 has no application to the facts in the instant case because section 3.08 thereof provides, inter alia, that the revenue procedure has no application to amounts received under guaranty or warranty contracts.

Although we agree that the trend of the previously mentioned pronouncements indicates a commendable effort by the Commissioner to attempt to reconcile tax accounting with generally accepted accounting principles, we cannot extend the concessions by the Commissioner beyond their stated scope.[1] Section 1.451-5(a)(1), Income Tax Regs., limits the application of the regulation as follows:

Sec. 1.451-5 Advance payments for goods and long-term contracts.

(a) *Advance payment defined.* (1) For purposes of this section, the term "advance payment" means any amount which is received in a taxable year by a taxpayer using an accrual method of accounting for purchases and sales or a long-term contract method of accounting (described in sec. 1.451-3), pursuant to, and to be applied against, an agreement:

(i) For the sale or other disposition in a future taxable year of goods held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business, or

(ii) For the building, installing, constructing or manufacturing by the taxpayer of items where the agreement is not completed within such taxable year.

Since the warranty contracts clearly do not come within the phrase "building, installing, constructing or manufacturing," we must determine whether the substance of the warranty contracts involve the sale of "goods held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business." To reason that warranty contracts must be covered under the regulation since they were specifically excluded from the revenue procedure tends to oversimplify the matter.

We consider the amounts received under the warranty contracts to be more in the nature of insurance and, therefore,

---

[1] Without articulating it as such, we assume that the end result of petitioner's reliance on sec. 1.451-5 of the Income Tax Regulations is to obviate any need for obtaining the Commissioner's consent to change an accounting method which allegedly occurred when the deferral method was adopted in 1968. Sec. 446(e), I.R.C. 1954. Although we are intrigued by the ramifications inherent in an argument dispensing with consent when there has been a change from a proper method of treatment to an improper method which is subsequently rendered proper pursuant to the retroactive application of a regulation, we find its consideration unnecessary to our determination.

distinguishable from amounts paid either for services or for the sale of goods.[2] We find that section 1.451-5(a)(1)(i) and (ii) does not apply to warranty contracts. Further, since the concessions by the Commissioner provided in section 1.451-5 were apparently not required by case law but were accorded as a matter of grace, we find Internal Revenue Service News Release No. 1055, August 6, 1970, informative as to the intended scope of the pronouncements and it explicitly denies relief in the case of warranty contracts.

These new rules represent a change from the IRS's past position that advance payments are with limited exceptions includible in the taxpayer's income in the year of receipt.

The rules relating to advance payments received for sale of goods for future delivery will be contained in proposed Income Tax Regulations to be published as a Notice of Proposed Rule Making in the Federal Register, Friday, Aug. 7, 1970. Advance payments received for the future performance of services will be covered in a Revenue Procedure to be published in a Technical Information Release, Thursday, Aug. 6, 1970.

\* \* \*

The Revenue Procedure permits advance payments received pursuant to an agreement for future services to be deferred until the time of performance, but in no event beyond the year after the year of receipt. Such payments can only be deferred where the agreement requires that all the services to be performed under the agreement must be performed by the end of the year following the year of receipt. \* \* \*

In addition, the IRS stated that the Revenue Procedure would not allow deferral for amounts received by a taxpayer for service, guarantee or warranty contracts that relate to property also sold by the taxpayer. The reason for this, the IRS stated, is that the difficult problems involved in providing adequate rules for distinguishing between amounts received for the merchandise sold and the services to be rendered and for establishing transitional rules in these cases have not yet been solved. These problems are under active study.

We find that the accrual method of accounting does not permit deferred recognition of prepayments received pursuant to warranty contracts either by a direct decrease in sales or an increase in the cost of goods sold and it is, therefore, unnecessary for us to decide whether petitioner's change in its method of treating the payments constituted a change in its method of accounting, which would require the consent of the Commissioner, or whether it was merely a correction of the prior erroneous treatment of the payments under the accrual method of accounting, as claimed by petitioner. See *American Can Co.*, 37

---

[2] Couch, Insurance 2d, sec. 1:15 (1959).

T.C. 198 (1961), affd. in part and revd. in part 317 F.2d 604 (2d Cir. 1963); *Simplified Tax Records, Inc.,* 41 T.C. 75, 82 (1963).

*Decision will be entered for the respondent.*